**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ATTORNEY GENERAL DANA NESSEL,
on behalf of the People of the State of
Michigan, and the STATE OF MICHIGAN,

                Plaintiffs,

v.

3M COMPANY, E.I. DU PONT DE
NEMOURS AND COMPANY, THE
CHEMOURS COMPANY, THE
CHEMOURS COMPANY FC, LLC,
DOWDUPONT, INC., CORTEVA, INC.,
DUPONT DE NEMOURS, INC., DYNEON,
L.L.C., ARCHROMA U.S., INC.,
ARCHROMA MANAGEMENT, LLC,
ARKEMA, INC., ARKEMA FRANCE, S.A.,
AGC CHEMICALS AMERICAS INC.,
DAIKIN AMERICA, INC., DAIKIN
INDUSTRIES, LTD., and SOLVAY
SPECIALTY POLYMERS, USA, LLC,

                Defendants.

Civil Action No. 21-CV-205

**NOTICE OF REMOVAL**

**JURY TRIAL DEMANDED**

Defendant 3M Company ("3M"), by and through undersigned counsel, hereby gives notice of removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the State of Michigan Circuit Court for the 17th Judicial Circuit, Kent County, to the United States District Court for the Western District of Michigan. 3M is entitled to remove this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). As further grounds for removal, 3M states as follows.

## PRELIMINARY STATEMENT

1.      Attorney General Dana Nessel and the State of Michigan ("Plaintiffs") brought this action (the "PFAS action") seeking to hold 3M and multiple others liable based in part on their alleged conduct in designing, manufacturing, and/or selling per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctane sulfonate ("PFOS") and perfluoro-octanoic acid ("PFOA"), which purportedly have resulted in alleged damages to the natural resources and property of the State. In their Complaint, Plaintiffs alleged that "PFAS as defined in this Complaint does _not_ include aqueous film-forming foams ('AFFFs') of any kind or type containing PFOA and/or PFOS, or otherwise." Compl. § 19.[1] However, as set forth below, the discovery responses served by Plaintiffs in this action on January 28, 2021 have made clear that Plaintiffs in this case do in fact seek to recover against Defendants for alleged "PFAS" contamination at various sites stemming in whole or in part from the use of PFAS-containing AFFF, including AFFF that is subject to federal military specifications ("MilSpec AFFF"). Accordingly, 3M intends to assert the federal "government contractor" defense against Plaintiffs' claims. Under the federal officer removal statute, 3M is entitled to remove this action to have its federal defense adjudicated in a federal forum, as multiple courts addressing this issue in PFAS litigation have previously held.

---

[1]      Pursuant to the Western District of Michigan e-filing rules and procedures, the summons served on 3M, the complaint, 3M's answer, and the notice of filing of notice of removal being filed in state court are attached as separate exhibits (Exhibits A through D respectively).

*See, e.g.*, Ex. E, Order Denying Motion To Remand 7-8, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, ECF No. 60 (W.D. Mich. Jan. 6, 2021) (Maloney, J.) ("*Nessel* Order Denying Remand"); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.* ("*In re AFFF*"), No. 2:18-mn-2873, 2019 WL 2807266, at *2 (D.S.C. May 24, 2019). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008); *accord* Ex. E, *Nessel* Order Denying Remand 5.

## **BACKGROUND**

2.    As described below, this action is one of three purportedly separate actions that Plaintiffs have brought to recover damages for alleged PFAS contamination in the State of Michigan. Plaintiffs filed three separate complaints in three different courts in an apparent effort to try to avoid federal jurisdiction for at least those claims initially filed in state court.

3.    Plaintiffs filed this action on January 14, 2020, in the State of Michigan Circuit Court for the 22nd Judicial Circuit, Washtenaw County, bearing Case No. 20-000049-NZ. *See* Compl. Venue for this action was then changed to the State of Michigan Circuit Court for the 17th Judicial Circuit, Kent County, where this action was assigned Case No. 20-03366-NZ.

4.    Plaintiffs here generally allege that Defendants (including 3M) have manufactured, marketed, and sold "PFAS and/or PFAS-containing products" which were used or discharged at various sites throughout the State of Michigan. *E.g.*, Compl. ¶ 100. Among other remedies, Plaintiffs seek "[c]ompensatory damages arising from PFAS contamination and injury of the State natural resources and property, including groundwater, surface waters, drinking water supplies, biota, wildlife (including fish), and their associated soils, sediments, and uses, and other State natural resources and property." *Id.*, p. 109. Plaintiffs assert claims against 3M and other

Defendants for liability under Michigan's Natural Resources and Environmental Protections Act ("NREPA") (*id.* ¶¶ 457-503), and for negligence (*id.* ¶¶ 515-521), trespass (*id.* ¶¶ 522-356), public nuisance (*id.* ¶¶ 537-550), and unjust enrichment (*Id.* ¶ 551-557).

5.       On August 20, 2020, Plaintiffs filed two additional actions seeking damages and other remedies for alleged PFAS contamination in Michigan. First, Plaintiffs filed a suit against 3M and other Defendants in the U.S. District Court for the Western District of Michigan, asserting claims for injuries allegedly caused by PFAS from the use of MilSpec AFFF throughout Michigan. *See* Ex. F, *Nessel v. E.I. DuPont de Nemours and Co., et al.*, No. 1:20-cv-00787, ECF No. 1 (W.D. Mich.) (the "putative MilSpec AFFF" complaint). After the case was assigned to the Hon. Paul L. Maloney, the Judicial Panel for Multidistrict Litigation ("JPML") transferred it, without objection by Plaintiffs, to the U.S. District Court for South Carolina for inclusion in the *In re AFFF* MDL pending before the Hon. Richard Gergel. *In re AFFF*, MDL 2873, ECF No. 687 (J.P.M.L. Sept. 11, 2020).

6.       Second, Plaintiffs filed a suit in the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County, purportedly asserting claims for injuries allegedly caused by PFAS from "commercial" or "non-MilSpec" AFFF throughout Michigan. *See* Ex. G, *Nessel v. Chemguard, Inc., et al.*, No. 20-000458-CE, Dkt. 1 (the "putative commercial AFFF" complaint).[2] That state-court action was removed to the U.S. District Court for the Western District of Michigan by other AFFF manufacturer defendants based on federal officer jurisdiction on the ground that the alleged PFAS contamination at issue there arose in part from MilSpec AFFF, and defendants intended to assert the federal government contractor defense against Plaintiffs' claims. That case was also assigned to Judge Maloney, and Plaintiffs moved to remand the action to state court,

---

[2]       Plaintiffs did not name 3M as a Defendant in their putative commercial AFFF action.

contending that the complaint did not seek damages for MilSpec AFFF. Motion to Remand, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, ECF No. 25; *see* Ex. G, Putative Commercial AFFF Complaint ¶ 5 ("This Complaint does *not* seek to remedy contamination caused by the release of Mil-Spec AFFF." (emphasis in original)). Judge Maloney denied the motion to remand, agreeing with the defendants "that Plaintiffs' artful pleading does not obviate the facts on the ground." Ex. E, *Nessel* Order Denying Remand 7-8. Over Plaintiffs' objection, the JPML then transferred that case, too, to the *In re AFFF* MDL. In doing so, the JPML explained that "it seems likely that plaintiffs' commercial AFFF and Mil-Spec AFFF actions will share common factual questions, as both involve contamination of the same groundwater in the State of Michigan," that it had "previously rejected an attempt by a water authority to split its claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL," and that "it would [be] inefficient for plaintiffs' commercial AFFF action to proceed separately from its Mil-Spec AFFF action." Ex. H, Transfer Order 4, *In re AFFF*, MDL 2873, ECF No. 866 (J.P.M.L. Feb. 4, 2021).

7.     On January 28, 2021, Plaintiffs served 3M with their Objections and Responses to Defendant Daikin America, Inc.'s First Set of Interrogatories and Requests for Admission (attached as Exhibit I) (the "January 28 discovery responses"). Plaintiffs' January 28 discovery responses disclosed the identities of certain sites, including RACER Willow Run, at which Plaintiffs are seeking to recover in this case for alleged PFAS contamination from both alleged non-AFFF and AFFF sources. Upon information and belief, Plaintiffs elsewhere have claimed that the contamination at some of the sites that Plaintiffs have put at issue in this case, including RACER Willow Run, resulted in part from MilSpec AFFF.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 102 and 1441(a) because the State of Michigan Circuit Court for the 17th Judicial Circuit, Kent County, is located within the Western District of Michigan, Southern Division.

9.     3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Torres v. CBS News*, 854 F. Supp. 245 (S.D.N.Y. 1994); *Steele v. United States*, 2019 WL 6712024, at *4 (S.D. Ohio Dec. 10, 2019).

10.     Pursuant to 28 U.S.C. § 1446(a), copies of "all process, pleadings, and orders served upon [3M]" in this action as of this date are attached to this Notice of Removal as Exhibit J.

11.     This Notice of Removal is timely filed under 28 U.S.C. § 1446(b) because "the case stated by the initial pleading [wa]s not removable" and this Notice of Removal is being "filed within thirty days after receipt by [3M] … of a copy of an … other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). More specifically, this Notice of Removal is being filed within 30 days after receipt by 3M of Plaintiffs' January 28, 2021 discovery responses (attached as Exhibit I), from which 3M first ascertained that this case is removable pursuant to the federal officer jurisdiction statute.

12.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties to this case, and a copy is being filed with the Clerk of the State of Michigan Circuit Court for the 17th Judicial Circuit, Kent County.

13.     By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

14.     3M reserves the right to amend or supplement this Notice of Removal.

15.     If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

16.     Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251; *see Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 133-35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135; Ex. E, *Nessel* Order Denying Remand 4-5.

17.     Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, 28 U.S.C. § 1442 as a whole must be "liberally construe[d]" in favor of removal.

*Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original, internal quotation marks omitted).

18.     All requirements for removal under § 1442(a)(1) are satisfied here. *See*, *e.g.*, Ex. E, *Nessel* Order Denying Remand 5-8; *Ayo v. 3M Co*., 2018 WL 4781145, at *7-15 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case against 3M and other AFFF manufacturers). In similar cases pending in the *In re AFFF* MDL, including in multiple separate lawsuits filed by the State of New York, Judge Gergel has found that removal under § 1442 was proper. *See* Ex. K, Order 3-6, *In re AFFF*, No. 2:18-mn-2873, ECF No. 325 (D.S.C. Oct. 1, 2019) ("*Ridgewood Water* Order") (removal requirements satisfied where plaintiff's claims were based in part on MilSpec AFFF); *In re AFFF*, 2019 WL 2807266, at *2 (denying motion to remand first AFFF action filed by the State of New York); Order 3-5, *In re AFFF*, No. 2:18-mn-2873, ECF No. 320 (D.S.C. Sept. 27, 2019) (denying motion to remand second AFFF action filed by the State of New York). Judge Maloney's Order Denying Remand in *Nessel* and the MDL Court's holdings clearly demonstrate that this case, too, is properly removed to federal court.[3]

A.       **MilSpec AFFF**

19.     Since the late 1960s/early 1970s, the United States military began using AFFF that meets military specifications ("MilSpec AFFF") on military bases, airfields, and Navy ships— settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the U.S. Naval Research Laboratory developed AFFF with some assistance from industry participants, and its researchers were granted the first

---

[3]     Following removal, 3M intends to designate this action for transfer to the MDL.

AFFF patent in 1966.[4]  Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[5]

20.     The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[6] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[7] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[8] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

21.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of chemical

---

[4]      U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[5]      U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), http://bit.ly/2mujJds.

[6]      The 1969 MilSpec and all its revisions and amendments through the April 2020 amendment (MIL-PRF-24385F(4)) are available at https://tinyurl.com/yxwotjpg.

[7]      Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[8]      Dep't of Defense SD-6, at 1.

compounds that includes PFOA and PFOS, some of the very PFAS compounds at issue in the Complaint here.[9] And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term."[10] PFOA or PFOS are unavoidably present at some concentrations in some fluorocarbon surfactants used in MilSpec AFFF, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

22.    The Complaint (¶ 17) in this case alleges contamination from "PFAS" including "PFOA" and "PFOS."  But in the Complaint, Plaintiffs purported to disclaim seeking to recover in this lawsuit for putative PFAS contamination caused by MilSpec AFFF or any other AFFF products. Thus, the Complaint averred that "PFAS as defined in this Complaint does _not_ include aqueous film-forming foams (AFFFs) of any kind or type containing PFOA and/or PFOS, or otherwise." Compl. ¶ 19 (emphasis in original). Recent developments, however, have made it clear that Plaintiffs *in this case* do now seek to recover for alleged injuries purportedly caused in part by the use of MilSpec AFFF.

23.    Plaintiffs' January 28, 2021 discovery responses contain a chart disclosing "PFAS 'sites'" and "areas of interest" at which Plaintiffs have allegedly discovered "PFAS" contamination for which they are seeking to recover damages and remedies in this case. Ex. I at 35-41. The same chart also lists "AFFF 'sites'" and "areas of interest" identified by Plaintiffs. *Id*. Although Plaintiffs tried to argue in their discovery responses that "[t]his litigation does not involve AFFF contamination" (*id*. at 35), Plaintiffs denied a Request to Admit that "Defendants

---

[9]        *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017).

[10]      *See* MIL-PRF-24385F(3) §§ 3.2, 6.6 (2019).

cannot be held liable for any PFAS contamination for which [Plaintiffs] seek Relief unless [they] prove that the contamination is not attributable . . . to the manufacture, sale, storage, or use of AFFF." *Id*. at 6. And in fact, four of the sites listed on Plaintiffs' chart are identified as *both "PFAS" and "AFFF" sites or areas of interest*. *Id*. at 40, 41.

24.     In particular, Plaintiffs' January 28, 2021 discovery responses identify RACER Willow Run as a site at issue in this putative "non-AFFF" case that in fact allegedly has contamination from both "PFAS" (*i.e.*, in Plaintiffs' strained verbiage, "non-AFFF") *and* "AFFF" sources. *Id*. at 40.  Moreover, upon information and belief, Plaintiffs elsewhere claim that the "AFFF" contamination at RACER Willow Run arises, at least in part, from *MilSpec* AFFF. Further, upon information and belief, Plaintiffs are seeking to recover for alleged contamination at RACER Willow Run in their *MilSpec* AFFF case, now pending in the *In re AFFF* MDL. It thus has become evident that MilSpec AFFF is a source of at least a part of the alleged PFAS contamination giving rise to Plaintiffs' alleged injuries in this case.

25.     Upon information and belief, MilSpec AFFF is a plausible source of the alleged PFAS contamination at other "PFAS" sites identified by Plaintiffs in their January 28, 2021 discovery responses in this case. Upon information and belief, some of those sites are either proximate to or downriver from sites at which Plaintiffs themselves claim that alleged PFAS contamination arises, at least in part, from MilSpec AFFF. For example, upon information and belief, Plaintiffs claim that PFAS contamination at the Wurtsmith Air Force Base and other locations in Oscoda, Michigan arose at least in part from MilSpec AFFF, and are seeking to recover for such PFAS contamination in their MilSpec AFFF lawsuit. The Wurtsmith Air Force Base is in the vicinity of the "Oscoda Township Dump" and "AuSable Twp Smith Street Area" sites, both

of which are identified by Plaintiffs' January 28, 2021 discovery responses as "PFAS" sites at issue in this case. *Id*. at 36, 37.

26.     Because the alleged PFAS contamination at RACER Willow Run and other sites identified by Plaintiffs' January 28, 2021 discovery responses as at issue in this case is plausibly attributable in part to *MilSpec* AFFF, 3M is entitled to remove this case as a whole pursuant to federal officer jurisdiction. As Judge Maloney held in denying Plaintiffs' motion to remand in the putative "commercial AFFF" case, "[i]t is entirely possible that Plaintiffs' injuries occurred from actions taken while Defendants were acting under color of federal office: namely, MilSpec AFFF," and "while Plaintiffs attempt to surgically divide their complaints between Commercial and MilSpec AFFF, they cannot prevent Defendants from raising the production of MilSpec AFFF as a defense or alternative theory." Ex. E, *Nessel* Order Denying Remand 7. Here too, 3M is entitled to raise "the production of MilSpec AFFF as a defense or alternative theory" to Plaintiffs' allegations of PFAS contamination at sites that the Plaintiffs' January 28, 2021 discovery responses identified as at issue in this case, such as RACER Willow Run, the Oscoda Township Dump, and the AuSable Township Smith Street Area.

27.     The circumstances here are also similar to those in *Ridgewood Water v. 3M*—an action in which the plaintiff alleged damages from PFAS contamination of its water supply from both AFFF and non-AFFF sources. *See Ridgewood Water v. 3M Comp.*, No. 2:19-cv-09651 ("*Ridgewood Water*"), ECF No. 1, Ex. 2 (D.N.J. April 11, 2019) (*Ridgewood Water* complaint). That action was removed to federal court based on federal officer jurisdiction and subsequently transferred by the JPML to the *In re AFFF* MDL. *See* Notice of Removal, *Ridgewood Water*, ECF No. 1; Order, *In re AFFF*, MDL 2873, ECF No. 483 (July 31, 2019). Judge Gergel denied the plaintiff's motion to remand. *See* Ex. K, *Ridgewood Water* Order. As Judge Gergel acknowledged,

in its complaint, the plaintiff in that case—like Plaintiffs here—affirmatively disavowed any claim to recover for damages from contamination of its water supply due to *MilSpec* AFFF, but instead was purporting to bring suit to recover for PFAS contamination from other sources, including commercial (non-MilSpec) AFFF. *Id*. at 2-3. But the removing defendants had shown that the contamination of the plaintiff's water supply was plausibly attributable in part to releases of PFAS from the use of MilSpec AFFF at a nearby airport. Although Plaintiffs disputed that evidence (*see id.* at 3), Judge Gergel nevertheless concluded that federal officer removal was appropriate because the defendants "contend[ed] that the AFFF products were manufactured according to MilSpec" and thus had a "colorable" federal defense. *Id*. at 5. If anything, removal based on federal officer jurisdiction is even more clearly supported here—and certainly colorable—because, upon information and belief, Plaintiffs claim that PFAS contamination at the RACER Willow Run site at issue in this case is due, at least in part, to MilSpec AFFF.

### B.      All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied

#### 1.      The "Person" Requirement Is Satisfied

28.      The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) is a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "'companies, associations, firms, [and] partnerships.'" *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *see Bennett*, 607 F.3d at 1085 (holding that a non-natural entity is a "person" for purposes of § 1442(a)(1)); Ex. E, *Nessel* Order Denying Remand 5.

#### 2.      The "Acting Under" Requirement Is Satisfied

29.      The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Isaacson*, 517 F.3d at 137 (internal quotation marks omitted). "The words 'acting under' are to be interpreted broadly." *Id.* at 136

(citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

30. The requirement is met here because the alleged PFAS contamination at sites at issue in this case stems, at least in part, from MilSpec AFFF, a vital product provided by 3M that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[11]

31. Accordingly, the military has long depended upon outside contractors like 3M to manufacture and supply AFFF. *See* Ex. E, *Nessel* Order Denying Remand 5 ("[I]f a private contractor is performing a job that 'in the absence of a contract with a private firm, the Government itself would have had to perform,' the contractor is acting under a federal officer. In this case, Plaintiffs have admitted that Defendants were producing MilSpec AFFF . . . . This is a product that the Government would have had to create if Defendants[12] did not exist." (quoting *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 153-34 (2007))); *Ayo*, 2018 WL 4781145, at *8-9 (holding that 3M and other AFFF manufacturers were "acting under" a federal officer in connection with

---

[11]     *Fulfilling the Roosevelts' Vision* 37.

[12]     The "Defendants" in that case, to whom Judge Maloney was referring, include 3M.

the manufacture and sale of MilSpec AFFF); *In re AFFF*, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military). If 3M and other manufacturers did not provide MilSpec AFFF for use by the military, the government would have to manufacture and provide the product itself. "Therefore, [3M] ha[s] satisfied the 'acting under' requirement of § 1442(a)(1)." Ex. E, *Nessel* Order Denying Remand 5.

32.     In designing, manufacturing and supplying MilSpec AFFF products, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the MilSpec AFFF products were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the United States Department of Defense.[13]

### 3.     The Causation Requirement Is Satisfied

33.     The third requirement, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (alteration, citation, and internal quotation marks omitted). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.*; *accord* Ex. E, *Nessel* Order Denying Remand 6. Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137.[14]

---

[13]     *See* Dep't of Defense, SD-6, at 1.

[14]     The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

34.    "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Id.* at 137-38. Here, the Plaintiffs' claims of PFAS contamination at sites at issue in this case arise at least in part from 3M's production and sale of AFFF manufactured to military specifications, which were then allegedly used or disposed by others in the State of Michigan. Upon information and belief, Plaintiffs are seeking to recover for injuries caused at least in part by the use of PFAS in MilSpec AFFF. 3M contends that the use of PFAS chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was manufactured by 3M to meet specifications established by the Department of Defense. Military installations are or have been required to employ MilSpec AFFF. The design choices and other liability Plaintiffs are attempting to impose via state law would create a conflict in which 3M could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 509 (1988); *see also Ayo*, 2018 WL 4781145, at \*9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); *In re AFFF*, 2019 WL 2807266, at \*2 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims [the defendant] manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."). As Judge Maloney explained, "[e]ven if plaintiffs are later able to demonstrate that their injuries occurred 'because of an act not contemplated by [the federal contract], it is sufficient for [removal] purposes that [execution of the federal contracts] gave rise [to] the alleged cross-contamination.' The specific factual questions of whether the challenged act was within the scope of the federal contract are for federal—not state—courts to answer." Ex. E, *Nessel* Order Denying Remand 6 (quoting *Bennett*, 607 F.3d at 1088).

16

### 4.    The "Colorable Federal Defense" Requirement Is Satisfied

35.    The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

36.    At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original, citation omitted). A "defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Bennett*, 607 F.3d at 1089 ("[A] colorable federal defense need only be plausible . . . [and] a district court is not required to determine its validity at the time of removal." (internal citation omitted)); *Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). As Judge Gergel and Judge Maloney have both held, "the defense need not be 'clearly sustainable' to justify removal as merely 'colorable.'" *In re AFFF*, 2019 WL 2807266, at *3; *see* Ex. E, *Nessel* Order Denying Remand 8 ("Defendants need not completely prove the validity of this defense; they must only show that the defense is plausible." (citing *Bennett*, 607 F.3d at 1089)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116 (citing *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)).[15] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to

---

[15]    *See also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (citations omitted)).

Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted); *see also Bennett*, 607 F.3d at 1090–91.

37.     Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

38.     3M has satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. 3M's products appeared on the DOD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *In re AFFF*, 2019 WL 2807266, at *2 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

39.     Moreover, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contain PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or health issues.[16] For example, in October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire-fighting exercises are considered to have adverse effects environmentally."[17] More recently, in a November 2017 report to Congress, the Department of Defense acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[18] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[19] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of

---

[16]     *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1-6 (Nov. 4, 2002) (excerpt).

[17]     *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[18]     Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/y5un3zq8.

[19]     MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); *In re AFFF*, 2019 WL 2807266, at *2 ("As to whether [Defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [Defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

40.     At a minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation and other specifications of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011) ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

41.     In short, 3M has met its burden to remove the case—in accordance with other decisions addressing motions to remand in PFAS litigation—"by alleging that the Government provided specifications for MilSpec AFFF, that [its] AFFF conformed to those specifications, and that [it was] not aware of any dangers unknown to the Government. Whether these facts are true

is not for this Court to determine at this stage. The Court need only consider whether the defense is plausible; it is." Ex. E, *Nessel* Order Denying Remand 8.

WHEREFORE, 3M hereby removes this action from the State of Michigan Circuit Court for the 17th Judicial Circuit, Kent County, to this Court.

Dated: March 1, 2021                        Respectfully submitted,

                                            */s/* Daniel L. Ring
                                            Daniel L. Ring  (P00174)
                                            MAYER BROWN LLP
                                            71 South Wacker Drive
                                            Chicago, IL 60606
                                            (312) 782-0600
                                            dring@mayerbrown.com

                                            Robert L. DeJong (P12639)
                                            Joseph M. Infante (P68719)
                                            MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
                                            99 Monroe Avenue NW, Suite 1200
                                            Grand Rapids, MI  49503
                                            (616) 454-8656
                                            dejong@millercanfield.com
                                            infante@millercanfield.com

                                            *Counsel for 3M Company*

## CERTIFICATE OF SERVICE

I certify that on March 1, 2021, copies of the foregoing **NOTICE OF REMOVAL,** with its Exhibits, are being served on all parties via first class mail and/or email, at the addresses indicated below.*

Dana Nessel
Attorney General
Polly A. Synk
Danielle Allison-Yokom
Assistant Attorneys General
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
**Attorneys for Plaintiffs**
P.O. Box 30755
Lansing, MI 48909
synkp@michigan.gov
allisonyokomd@michigan.gov

Adam J. Levitt
Amy E. Keller
Special Assistant Attorneys General
Daniel R. Flynn
Laura E. Reasons
Adam Prom
DiCello Levitt Gutzler LLC
**Attorneys for Plaintiffs**
10 North Dearborn Street, 11th Floor
Chicago, IL 60602
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
aprom@dicellolevitt.com

Richard W. Fields
Special Assistant Attorney General
Fields, PLLC
**Attorney for Plaintiffs**
1700 K. Street NW, Suite 810
Washington, DC 2006
fields@fieldslawpllc.com

Gregory M. Utter
Joseph M. Callow, Jr.
Special Assistant Attorneys General
Keating Muething & Klekamp PLL
**Attorneys for Plaintiffs**
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
gmutter@kmklaw.com
jcallow@kmklaw.com

---

* Defendant Archroma Management, LLC, is not a party because it was dismissed for non-service on September 10, 2020. Defendant Asahi Kasei Plastics North America, Inc., is not a party because it was severed from this case on August 19, 2020. Defendant Dyneon L.L.C. has been dissolved since 2011, no longer exists, and has no valid agent for service of process.

Lanny Kurzweil
Ira Gottlieb
John McAleese
McCarter & English, LLP
**Attorney for Defendants E.I. du Pont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC, as to all claims except the fraudulent transfer claim**
100 Mulberry Street, Four Gateway Center
Newark, NJ 07102
lkurzweil@mccarter.com
igottlieb@mccarter.com
jmcaleese@mccarter.com

J. Michael Huget
Anthony Acciaioli
Honigman LLP
**Attorneys for Defendants E.I. DuPont De Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC, as to all claims except the fraudulent transfer claim**
315 East Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108
mhuget@honigman.com
aacciaioli@honigman.com

Katherine L.I. Hacker
Bartlit Beck LLP
**Attorney for Defendants E. I. du Pont de Nemours and Company, as to the fraudulent transfer claim, DowDuPont, Inc., Corteva, Inc., and DuPont de Nemours, Inc., as to all claims**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
kat.hacker@bartlitbeck.com

Matthew P. Kennison
Riley Safer Holmes & Cancila LLP
**Attorney for Defendants E. I. du Pont de Nemours and Company, as to the fraudulent transfer claim, DowDuPont, Inc., Corteva, Inc., and DuPont de Nemours, Inc., as to all claims**
121 W. Washington, Suite 402
Ann Arbor, MI 48104
mkennison@rshc-law.com

Christopher R. Gura
Abbott Nicholson, P.C.
**Attorney for Defendant The Chemours Company, as to the fraudulent transfer claim**
1900 West Big Beaver Road, Suite 203
Troy, MI 48084
crgura@abbottnicholson.com

Katharine A. Roin
Bartlit Beck LLP
**Attorney for Defendants E. I. du Pont de Nemours and Company, as to the fraudulent transfer claim, DowDuPont, Inc., Corteva, Inc., and DuPont de Nemours, Inc., as to all claims**
54 West Hubbard Street, Suite 300
Chicago, IL 60654
kate.roin@bartlitbeck.com

23

Anthony A. Agosta
Michael J. Pattwell
Zachary C. Larsen
Clark Hill PLC
**Attorneys for Defendant AGC Chemicals Americas Inc.**
212 East Cesar E. Chavez Avenue
Lansing, MI 48906
aagosta@clarkhill.com
mpattwell@clarkhill.com
zlarsen@clarkhill.com

Beth S. Gotthelf
John C. Valenti
Javon R. David
Butzel Long, P.C.
**Attorneys for Defendant Archroma U.S., Inc.**
150 W. Jefferson, Suite 100
Detroit, MI 48226
gotthelf@butzel.com
valenti@butzel.com
davidj@butzel.com

Gwyn Williams
Latham & Watkins LLP
**Attorney for Defendant Solvay Specialty Polymers USA, LLC**
200 Clarendon Street
Boston, MA 02216
gwyn.williams@lw.com

Theodore M. Grossman
Rebekah E. Blake
Jones Day
**Attorneys for Defendant Daikin America, Inc.**
250 Vesey Street
New York, NY 10281
tgrossman@jonesday.com
reblake@jonesday.com

Martha N. Donovan
Margaret Raymond-Flood
Norris McLaughlin, P.A.
**Attorneys for Defendant The Chemours Company, as to the fraudulent transfer claim**
400 Crossing Boulevard, 8th Floor
Bridgewater, NJ 08807
mndonovan@norris-law.com
mraymondflood@norris-law.com

Peter C. Condron
Clifford J. Zatz
Laura Offenbacher Aradi
Crowell & Moring LLP
**Attorneys for Defendant AGC Chemicals Americas, Inc.**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
pcondron@crowell.com
czatz@crowell.com
laradi@crowell.com

Steven P. Croley
Latham & Watkins LLP
**Attorney for Defendant Solvay Specialty Polymers USA, LLC**
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
steven.croley@lw.com

Kegan A. Brown
Latham & Watkins LLP
**Attorney for Defendant Solvay Specialty Polymers USA, LLC**
885 Third Avenue
New York, NY 10022
kegan.brown@lw.com

Cory M. Carone
Jones Day
**Attorney for Defendant Daikin America, Inc., and Daikin Industries, Ltd.**
150 W. Jefferson Ave.
Suite 2100
Detroit, MI 48226
ccarone@jonesday.com

Jessica A. Sprovtsoff
Robert D. Boley
J. Michael Showalter
Schiff Hardin LLP
**Attorneys for Defendants Arkema Inc. and Arkema France**
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
jsprovtsoff@schiffhardin.com
rboley@schiffhardin.com
mshowalter@schiffhardin.com

Louis A. Chaiten
James R. Saywell
Jones Day
**Attorneys for Defendant Daikin America, Inc.**
901 Lakeside Avenue East
Cleveland, OH 44114
lachaiten@jonesday.com
jsaywell@jonesday.com

Sara J. Gourley
Maja C. Eaton
Daniel A. Spira
Sidley Austin LLP
**Attorneys for Defendants Arkema Inc. and Arkema France**
One South Dearborn Street
Chicago, IL 60603
sgourley@sidley.com
meaton@sidley.com
dspira@sidley.com

*/s/* Daniel L. Ring
Daniel L. Ring