UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATTORNEY GENERAL DANA NESSEL, on
behalf of the People of the State of Michigan,
and the STATE OF MICHIGAN,

          Plaintiffs,

v

3M COMPANY, E.I. DUPONT DE NEMOURS
AND COMPANY, THE CHEMOURS
COMPANY, THE CHEMOURS COMPANY
FC, LLC, DOWDUPONT, INC.,  CORTEVA,
INC., DUPONT DE NEMOURS,  INC.,
DYNEON, L.L.C., ARCHROMA U.S.,  INC.,
ARCHROMA MANAGEMENT, LLC,
ARKEMA, INC., ARKEMA FRANCE, S.A.,
AGC CHEMICALS AMERICAS INC., DAIKIN
AMERICA, INC., DAIKIN INDUSTRIES,
LTD., and SOLVAY SPECIALTY POLYMERS,
USA, LLC,

          Defendants.

No. 1:21-cv-00205

HON. PAUL L. MALONEY

**PLAINTIFFS' BRIEF IN
SUPPORT OF MOTION TO
REMAND**

---

Dana Nessel
Attorney General
Polly A. Synk (P63473)
Danielle Allison-Yokom (P70950)
Assistant Attorneys General
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
synkp@michigan.gov
allisonyokomd@michigan.gov

Gregory M. Utter (P00255)
Joseph M. Callow, Jr. (P00250)
Special Assistant Attorneys
General
Keating Muething & Klekamp
PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com

---

Adam J. Levitt (Pro Hac Vice Filed)
Amy E. Keller (P74015)
Special Assistant Attorneys General
Daniel R. Flynn (Pro Hac Vice Filed)
Laura E. Reasons (Pro Hac Vice Filed)
Adam Prom (Pro Hac Vice Filed)
DiCello Levitt Gutzler LLC
10 North Dearborn Street, 11th Floor
Chicago, IL 60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
aprom@dicellolevitt.com

Richard W. Fields (Pro Hac
Vice Filed)
Special Assistant Attorney
General
Martin F. Cunniff (Pro Hac
Vice Filed)
Fields, PLLC
1901 L. St. N.W., Suite 600
Washington, DC 20036
(833) 382-9816
fields@fieldslawpllc.com
martincunniff@fieldslaw
pllc.com

David M. George (P68812)
John A. Ferroli (P35869)
Paul T. Stewart (P79977)
Dykema Gossett PLLC
Attorneys for Defendant Asahi Plastics North
America, Inc.
2723 South State Street, Suite 400
Ann Arbor, MI 48104
(734) 214-7660
dgeorge@dykema.com
jerroli@dykema.com
pstewart@dykema.com

J.  Michael  Huget  (P39150)
Honigman LLP
Attorney for Defendants E. I.
DuPont De Nemours and
Company, The Chemours
Company, and The
Chemours Company FC,
LLC
315 East Eisenhower
Parkway, Suite 100
Ann Arbor, MI 48108
(734) 418-4254
mhuget@honigman.com

Lanny Kurzweil (Pro Hac Vice)
Ira Gottlieb (Pro Hac Vice)
McCarter & English, LLP
Attorneys for Defendants E. I. DuPont De
Nemours and Company, The Chemours
Company, and The Chemours Company FC,
LLC
100 Mulberry Street, Four Gateway Center
Newark, NJ 07102
(973) 639-2044
lkurzweil@mccarter.com
igottlieb@mccarter.com

Matthew P. Kennison (P79653)
Riley Safer Holmes & Cancila
LLP
Attorney for Defendants E. I.
DuPont De Nemours and
Company, DowDuPont, Inc.,
Corteva, Inc., and DuPont
DeNemours, Inc.
121 W. Washington, Suite 402
Ann Arbor, MI 48104
(734) 773-4911
mkennison@rshc-law.com

Anthony A. Agosta (P57355)
Michael J. Pattwell (P72419)
Zachary C. Larsen (P72189)
Clark Hill PLC
Attorneys for Defendant AGC Chemicals
Americas Inc.
212 East Cesar E. Chavez Avenue
Lansing, MI 48906
(517) 318-3100
aagosta@clarkhill.com
mpattwell@clarkhill.com
zlarsen@clarkhill.com

Robert L. DeJong (P12639)
Joseph M. Infante (P68719)
Miller, Canfield, Paddock and
Stone, P.L.C.
Attorneys for Defendant 3M
Company
99 Monroe Avenue NW,
Suite 1200
Grand Rapids, MI 49503
(616) 454-8656
dejong@millercanfield.com
infante@millercanfield.com

Daniel L. Ring (Pro Hac Vice Filed)
Joshua D. Yount (Pro Hac Vice Filed)
Joseph M. Callaghan (Pro Hac Filed)
Mayer Brown LLP
Attorneys for Defendant 3M Company
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
dring@mayerbrown.com
jyount@mayerbrown.com
jcallaghan@mayerbrown.com

Katherine L.I. Hacker (Pro Hac
Vice Filed)
Bartlit Beck LLP
Attorney for Defendants E. I.
DuPont De Nemours and
Company, as to the fraudulent
transfer claim, and DowDuPont,
Inc., Corteva, Inc., and DuPont
de Nemours, Inc. as to all claims
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100
kat.hacker@bartlitbeck.com

Katharine A. Roin (Pro Hac Vice Filed)
Bartlit Beck LLP
Attorney for Defendants E. I. DuPont De
Nemours and Company, as to the fraudulent
transfer claim, and DowDuPont, Inc., Corteva,
Inc., and DuPont de Nemours, Inc. as to all
claims
54 West Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400
kate.roin@bartlitbeck.com

Christopher R. Gura (P58437)
Abbott Nicholson, P.C.
Attorney for Defendant The
Chemours Company, as to the
fraudulent transfer claim
1900 West Big Beaver Road,
Suite 203
Troy, MI 48084
(313) 566-2500
crgura@abbottnicholson.com

---

Martha N. Donovan (Pro Hac Vice to be Filed)
Margaret Raymond-Flood (Pro Hac Vice to be
Filed)
Norris McLaughlin, P.A.
Attorneys for Defendant The Chemours
Company, as to the fraudulent transfer claim
400 Crossing Boulevard, 8th Floor
Bridgewater, NJ 08807
(908) 722-0700
mndonovan@norris-law.com
mraymondflood@norris-law.com

Gwyn Williams (Pro Hac Vice)
Alexander P. Rothschild (Pro Hac
Vice)
Latham & Watkins LLP
Attorney for Defendant Solvay
Specialty Polymers USA, LLC
200 Clarendon Street
Boston, MA 02216
(617) 948-6000
gwyn.williams@lw.com
alex.rothschild@lw.com

---

Kegan A. Brown (Pro Hac Vice)
Latham & Watkins LLP
Attorney for Defendant Solvay Specialty
Polymers USA, LLC
885 Third Avenue
New York, NY 10022
(212) 906-1224
kegan.brown@lw.com

Steven P. Croley (P60647)
Latham & Watkins LLP
Attorney for Defendant Solvay
Specialty Polymers USA, LLC
555 Eleventh Street NW, Suite
1000
Washington, D.C. 20004
(202) 637-2126
steven.croley@lw.com

---

Theodore M.  Grossman (Pro Hac Vice)
Rebekah E. Blake (Pro Hac Vice)
Jones Day
Attorneys for Defendant Daikin America,
Inc.
250 Vesey Street
New York, NY 10281
(212) 326-3939
tgrossman@jonesday.com
reblake@jonesday.com

James R. Saywell (Pro Hac Vice
to be Filed)
Louis A. Chaiten (Pro Hac Vice)
Jones Day
Attorneys for Defendant Daikin
America, Inc.
901 Lakeside Avenue East
Cleveland, OH 44114
(216) 586-3939
jsaywell@jonesday.com
lchaiten@jonesday.com

---

Maja C. Eaton (Pro Hac Vice)
Daniel A. Spira (Pro Hac Vice to be Filed)
Sidley Austin LLP
Attorneys for Defendant Arkema Inc.
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
sgourley@sidley.com
meaton@sidley.com
dspira@sidley.com

Jessica A. Sprovtsoff (P70218)
Robert D. Boley (P82350)
J. Michael Showalter (P84412)
Schiff Hardin LLP
Attorneys for Defendant Arkema
Inc.
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1500
jsprovtsoff@schiffhardin.com
rboley@schiffhardin.com
mshowwalter@schiffhardin.com

---

John C. Valenti (P53272)
Javon R. David (P78214)
Beth S. Gotthelf (P38951)
Butzel Long, P.C.
Attorneys for Defendant Archroma U.S., Inc.
150 Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7099
valenti@butzel.com
Davidj@butzel.com
gotthelf@butzel.com

Melanie Black Dubis (Pro Hac Vice)
Charles E. Raynal, IV (Pro Hac Vice)
Parker Poe Adams & Bernstein, LLP
Attorneys for Archroma U.S. Inc.
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
(919) 828-0564
melaniedubis@parkerpoe.com
charlesraynal@parkerpoe.com

Steven D. Weber (Pro Hac Vice)
Parker Poe Adams & Bernstein LLP
Attorney for Archroma U.S., Inc.
620 S. Tryon Street, Suite 800
Charlotte, NC 28202
(704) 335-9065
Steveweber@parkerpoe.com

Robert Jordan (Pro Hac Vice)
Parker Poe Adams & Bernstein LLP
Attorney for Archroma U.S., Inc.
200 Meeting Street, Suite 301
Charleston, South Carolina 29401
(843) 727-2650
robertjordan@parkerpoe.com

Peter C. Condron (Pro Hac Vice)
Clifford J. Zatz (Pro Hac Vice)
Laura Offenbacher Aradi (Pro Hac
Vice)
Crowell & Moring LLP
Attorneys for Defendant AGC
Chemicals Americas, Inc.
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500
pcondron@crowell.com
czatz@crowell.com
laradi@crowell.com

/

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

INTRODUCTION ................................................................................................... 2

BACKGROUND .................................................................................................... 5

ARGUMENT ....................................................................................................... 11

I.     Legal standard. ......................................................................................... 11

II.    3M's Notice of Removal is untimely. ...................................................... 11

    A.    3M knew before January 28, 2021 that Plaintiffs intend to seek
    recovery for PFAS contamination at RACER Willow Run, among
    other sites, and that those same sites also contain separate AFFF
    contamination. ....................................................................................... 12

    B.    3M had knowledge of its alleged basis for removal from the date
    Plaintiffs filed the initial Complaint. ...................................................... 17

    C.    Allowing 3M's untimely removal would significantly delay the
    proceedings and prejudice Plaintiffs while providing 3M the
    inequitable benefit of changing forums because the case is not
    proceeding in 3M's favor. ....................................................................... 21

III.   3M does not have a viable federal government contractor defense
    because Plaintiffs are not seeking any damages in this litigation related
    to AFFF ..................................................................................................... 24

    A.    Plaintiffs filed separate complaints for Mil-Spec AFFF
    contamination and PFAS contamination, and have consistently
    limited their recovery in this action to damages caused by non-
    AFFF sources of PFAS. ........................................................................... 24

    B.    Because Plaintiffs are not seeking damages in this case for
    contamination caused by any AFFF, 3M does not have a viable
    federal government contractor defense. .................................................. 27

        1.    3M was not "acting under" the direction of a federal officer
        or agency for purposes of the federal officer removal statute
        when it designed, manufactured, or supplied PFAS for
        consumer and industrial purposes. ............................................... 28

        2.    3M did not produce and/or sell non-AFFF PFAS products
        under color of federal office. ......................................................... 30

i

3.      3M does not have a colorable claim that the government
        contractor defense applies to the complaint in this matter. ......... 32

IV.     Attorneys' fees are appropriate under the circumstances of Defendant's
        removal. ................................................................................................ 34

CONCLUSION ................................................................................................ 35

## TABLE OF AUTHORITIES

### Cases

*Ayo v. 3M Co., No. 18-CV-0373,*
    2018 U.S. Dist. LEXIS 170996 (E.D.N.Y. Sep. 30, 2018) ...................................... 29

*Bence v. Cottman Transmission Sys., No. 5:03-CV-26,*
    2003 U.S. Dist. LEXIS 9671 (W.D. Mich. May 19, 2003) ..................................... 15

*Bennett v. MIS Corp.,*
    607 F.3d 1076 (6th Cir. 2010) ..................................................................... 32

*Berera v. Mesa Med. Group, PLLC,*
    779 F.3d 352 (6th Cir. 2015) ....................................................................... 17

*Boyle v. United Technologies Corp,*
    487 U.S. 500 (1988) .................................................................................. 32

*City of Albion v. Guar. Nat'l Ins. Co.,*
    35 F. Supp. 2d 542 (W.D. Mich. 1998) ......................................................... 12

*City of Cookeville v. Upper Cumberland Elec. Membership Corp.,*
    484 F.3d 380 (6th Cir.2007) .................................................................. 30-31

*Daleske v. Fairfield Communities, Inc.,*
    17 F.3d 321 (10th Cir. 1994) ...................................................................... 34

*Dietrich v. Autozone W., Inc. No. LA CV*
    19-04291, 2019 U.S. Dist. LEXIS 187651 (C.D. Cal. Oct. 28, 2019) ..................... 17

*Eastman v. Marine Mech. Corp.,*
    438 F.3d 544 (6th Cir. 2006) ...................................................................... 11

*Gorman v. Abbott Laboratories,*
    629 F. Supp. 1196, 1199 (D.R.I. 1986) ................................................... 21, 22

*Groesbeck Invs., Inc. v. Smith,*
    224 F. Supp. 2d 1144 (E.D. Mich 2002) ............................................. 17-18, 18

*Hamid v. Aircraft Serv. Int'l, No. 08-CV-10973,*
    2008 U.S. Dist. LEXIS 29246 (E.D. Mich. 2008) ............................... 21, 22, 23, 25

*Hauck v. Advance Auto Parts,*
    2013 U.S. Dist. LEXIS 34226 (S.D.N.Y. Mar. 12, 2013) ...................................... 15

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  474 F. Supp. 3d 1231 (N.D. Fla. 2020) ................................................... 33

*In re Welding Fume Prods. Liab. Litig.*
  606 F. Supp. 2d 716 (N.D. Ohio 2009) ................................................... 15

*Isaacson v. Dow Chem. Co.*,
  517 F.3d 129 (2d Cir. 2008) .................................................................... 29

*Jefferson County v. Acker*,
  527 U.S. 423 (1999) ................................................................................ 30

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005) ................................................................................ 34

*McCraw v. Lyons*,
  863 F. Supp. 430 (W.D. Ky. 1994) ..................................................... 21-22

*Olds v. Michigan Bell Tel. Co.*,
  1987 U.S. Dist. LEXIS 15680 (E.D. Mich. 1987) .................................... 15

*Orange" Product Liability Litigation*,
  304 F. Supp. 2d 404 (E.D.N.Y. 2004) ..................................................... 33

*Pureflex, Inc. v. Semmelmeyer-Corby Co.*,
  2001 U.S. Dist. LEXIS 10123 (W.D. Mich. 2001) .................................. 20

*Ritchie v. Williams*,
  395 F.3d 283 (6th Cir. 2005) ................................................................... 16

*Seaton v. Jabe*,
  992 F.2d 79 (6th Cir. 1993) ..................................................................... 12

*Thomas v. CVS Health Corp., No. 2:19-cv-04283-R-FFM*,
  2019 U.S. Dist. LEXIS 129788 (C.D. Cal. Aug. 1, 2019) ........................ 19

*Tolley v. Monsanto, Co.*,
  591 F. Supp. 2d 837 (S.D.W. Va. 2008) ............................................. 22-23

*Watson v. Philip Morris Co., Inc.*,
  551 U.S. 142 (2007) ........................................................... 28-29, 29, 30, 34

## Statutes

28 U.S.C. § 1442(a)(1) ................................................................................. 30

28 U.S.C. § 1446 ................................................... 3, 5, 7, 9, 10, 12, 17, 20, 21

28 U.S.C. § 1441 ......................................................................................... 11

28 U.S.C. § 1447 ..................................................................................... 1, 11

Plaintiffs, Attorney General Dana Nessel, on behalf of the People of the State of Michigan, and the State of Michigan (collectively, State or Michigan), pursuant to 28 U.S.C. § 1447(c), hereby move to remand this action back to the State of Michigan Circuit Court for the 17th Judicial Circuit, Kent County, and to recover reasonable attorneys' fees and costs incurred as a result of this removal, and in support of this motion, state as follows:

## PRELIMINARY STATEMENT

This case has been proceeding for more than a year in Michigan state court. The state court has denied Defendants' motions for summary disposition; set a fact discovery deadline; and scheduled bi-monthly status conferences with the parties to keep fact discovery on track.  Before 3M filed its Notice of Removal delaying all progress in the case, the parties had exchanged more than 3,000,000 pages of documents (with more documents to be produced); conducted depositions; and had scheduled additional depositions on agreed-upon dates.  3M now seeks removal to this Court arguing, as the *sole* basis for its untimely removal that:

> [T]he discovery responses served by Plaintiffs in this action on January 28, 2021 have made clear that Plaintiffs in this case do in fact seek to recover against Defendants for alleged "PFAS" contamination at various sites stemming in whole or in part from the use of PFAS-containing AFFF, including AFFF that is subject to federal military specifications ("MilSpec AFFF"). Accordingly, 3M intends to assert the federal "government contractor" defense against Plaintiffs' claims. (ECF No. 1, PageID.2.)

As explained below, however, 3M's statements are patently false.  Plaintiffs have consistently and uniformly "made clear" throughout this litigation, including but not limited to their January 28, 2021 discovery responses, that Plaintiffs do **not**

1

seek recovery for any damages caused by AFFF in this litigation. 3M misstates the nature of Plaintiffs' discovery responses to revive a deadline that has long passed. Its removal gambit (and corresponding effort to drag this PFAS case to the AFFF MDL) amount to nothing more than 3M's time-barred effort to shop this case away from the Kent County Circuit Court and into what it believes would be a more favorable forum. This Court should reject 3M's efforts and promptly remand this case to Kent County so that this case can proceed in accordance with Judge Quist's fact discovery schedule.

## INTRODUCTION

3M's misrepresentation of Plaintiffs' discovery responses, standing alone, is sufficient grounds to remand this case back to state court because 3M's factual basis for removal is simply wrong. Setting aside this factual inaccuracy, 3M has no legal basis for removing this action for the following reasons:

First, 3M's notice is untimely. The alleged "new" information that 3M purportedly relies on to justify its untimely notice—Plaintiffs' January 28, 2021 discovery responses indicating that RACER Willow Run contains both AFFF and PFAS—was explicitly conveyed to 3M long before January 28, 2021. For example:

- On September 25, 2020, Plaintiffs served 3M with Plaintiffs' Initial Disclosures that identified RACER Willow Run as a site at issue in this PFAS litigation.

- On January 8, 2021, Plaintiffs served 3M with Plaintiffs' Fact Sheet in the AFFF MDL which affirmatively informed 3M that RACER Willow Run is a site where "the State has identified . . . Mil-Spec AFFF."

2

- Also on January 8, 2021 date, 3M filed its Notice of Non-Party Fault admitting it knew that Former ESCO, another site identified in Plaintiffs' Initial Disclosures, contains AFFF contamination.

Even if the alleged "new" information in Plaintiffs' January 28, 2021 discovery responses could support removal, 3M was aware of this "new" information earlier than January 28, 2021, making its March 1, 2021 Notice of Removal untimely.  28 U.S.C. 1446(b)(3).

Second, any basis that 3M allegedly has today for asserting a federal government contractor defense existed when Plaintiffs filed the Complaint over a year ago.  3M represents to the Court that it "accordingly" intends to assert the federal "government contractor" defense against Plaintiffs' claims based on this "new" information on January 28, 2021— but it fails to inform the Court that it actually asserted the defense in its Answer on October 9, 2020.  If the federal government contractor defense was grounds for removal, 3M failed to timely remove when it actually asserted the defense months ago.

Moreover, 3M and the Defendants have been complaining about the purported commingling of PFAS and AFFF in Michigan for months.  Plaintiffs filed separate complaints for PFAS contamination and AFFF contamination and have identified separate damages caused by these distinct products from distinct sources. 3M has voiced its concern with Plaintiffs' approach on numerous occasions, arguing Plaintiffs should not be permitted to do so.  For example, counsel for Daikin America, speaking on behalf of all Defendants, represented to the Michigan Circuit Court on August 21, 2020 that Defendants believe Plaintiffs will be unable to distinguish which contamination was caused by AFFF from that caused by PFAS.  A

3

simple review of the record to date confirms that 3M's arguments that it was unaware of the presence of AFFF and PFAS in Michigan, including at RACER Willow Run, is simply inaccurate.

Third, removal would prejudice Plaintiffs while allowing 3M the benefit of a "wait and see" approach. In addition to removal causing delay, Plaintiffs have expended significant resources litigating this case for the past year in state court and would be unfairly prejudiced having to start from scratch in another forum. 3M should not be allowed to sit on its alleged basis for removal and pocket the argument until 3M believes the timing is convenient.

Lastly, but significantly, 3M cannot establish it has a colorable federal government contractor defense because Plaintiffs are not seeking recovery for damages caused by AFFF contamination in this action—even at sites where both contaminants may be present. 3M is free to argue that all or part of the contamination at any site is due to AFFF rather than PFAS. If 3M succeeds, Plaintiffs will have no claim for damages in this action as to the portion attributable to AFFF. Under any circumstance in this case, the federal government contractor defense will be irrelevant. Only where a plaintiff seeks recovery for damages proven to be caused by Mil-Spec AFFF—which Plaintiffs do not do here—may the federal government contractor defense become relevant. It is not relevant here. 3M's arguments may limit the recovery of damages, but they do not support removal of the state court litigation to federal court.

For all of the reasons set forth above and more fully below, 3M's Notice of Removal is factually and legally incorrect and removal of this action is improper. This

4

Court should remand this action to the Michigan Circuit Court for the 17th Judicial Circuit in Kent County, Michigan.

## BACKGROUND

**PFAS, Mil-Spec AFFF, and Commercial AFFF.**

AFFF and PFAS are not interchangeable. PFAS are a family of more than 5,000 chemical compounds containing strong carbon-fluorine bonds.  (Compl. at ¶ 18, ECF No. 1–2, PageID.43.) These synthetic chemicals do not occur naturally in the environment and have been in use since the 1940s in a wide array of consumer and industrial products, including Teflon and Scotchgard.  (*Id.* at ¶ 5–6, ECF No. 1–2, PageID.38.).  PFAS, as used in this Brief, refers to PFAS contaminants that come from industrial, consumer, and other sources wholly unrelated to AFFF.

AFFF, on the other hand, is a firefighting foam that is manufactured using specific types of PFAS, primarily PFOA and PFOS.  (*See* Ex. A—Plaintiffs' Mil-Spec Complaint, at ¶¶ 9–11).  Some AFFF was intended for military use and manufactured in accordance with military specification Mil-F-24385, a performance specification provided by the Department of Defense (Mil-Spec AFFF).  (*Id.* at page 1.) Other brands of AFFF were manufactured for commercial uses including at fire stations, fire suppression systems in commercial spaces, and other non-military uses (Commercial AFFF).  (*Id.* at ¶ 27.)  Commercial AFFF was not manufactured in accordance with military specification Mil-F-24385.  (*Id.*)  For ease of reference in this Brief, Commercial AFFF and Mil-Spec AFFF are referred to collectively as AFFF.

5

The separability of AFFF and PFAS has been recognized by the Judicial Panel on Multidistrict Litigation (the Panel or JPML).  The Panel has repeatedly refused to incorporate strictly PFAS related cases into the AFFF MDL.  As the Panel explained in another matter, "[w]e have not . . . transferred to the MDL actions that do not contain any allegations or claims relating to AFFF use. Indeed, we recently denied transfer of an action, Middlesex, in which the claims were 'directed at 3M and its manufacture, marketing, and sales of PFOS and PFOA, not its manufacture of AFFF products.'"  *See In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873, Doc. 585, pg. 3 (J.P.M.L. Feb. 5, 2020) (attached as Ex. B).  In fact, the JPML rejected 3M's Notice of Tag-Along Action seeking to have this case transferred to the MDL.  *See In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873, MIW/1:21-cv-00205 (J.P.M.L. Mar. 3, 2021) ("determin[ing] the listed action(s) is not appropriate for inclusion in the MDL.") (attached as Ex. C).  3M now seeks reconsideration of this ruling, but the distinction between PFAS and AFFF claims is clear.

**Michigan's legal actions to address PFAS and AFFF contamination.**

Michigan has discovered consumer, industrial, and other PFAS contamination wholly unrelated to AFFF at multiple sites throughout the state.  Michigan has identified the potential sources of the discovered consumer and industrial PFAS contamination.  Michigan initiated this legal action in January 2020 to hold companies accountable for their culpable conduct related to their distribution, sale,

6

release, supply, transport, arrangement for disposal or treatment, handling, and/or other release of PFAS for industrial and consumer use, unrelated to AFFF.

Michigan seeks to recover against PFAS manufacturers costs and damages related _exclusively_ to PFAS contamination from industrial and other sources distinct from AFFF.  The Complaint, in fact, explicitly excludes any contamination resulting from AFFF of any kind, whether Commercial or Mil-Spec. (Compl. at ¶ 19, ECF No. 1–2, PageID.43.)

In August of 2020, Michigan filed a completely separate complaint against Mil-Spec AFFF manufacturers, including 3M, concerning contamination caused exclusively by Mil-Spec AFFF.  (*See generally* Ex. A.)  The Mil-Spec Complaint excluded any claim for damages related to PFAS or Commercial AFFF.  (*Id.* at ¶ 27.) Michigan filed that case before this Court because that matter involved a federal claim under the Resource Conservation and Recovery Act.

Plaintiffs have filed separate complaints related to separate contaminants. The complaint at issue here concerns solely PFAS contamination not caused by any AFFF and Plaintiffs do not and will not seek any recovery for contamination caused by AFFF—even at sites where both contaminants may be present.  This has consistently been Plaintiffs' approach and Defendants have known this position from the outset.  Nothing in Plaintiffs' interrogatory responses changes this position.  Despite 3M's misrepresentations, Plaintiffs do _not_ seek to recover damages related to AFFF contamination in this action.

**Chronological history leading up to 3M's Notice of Removal.**

7

This case and related litigation establish that 3M knew of its purported basis for removal before Plaintiffs served their January 28, 2021 discovery responses:

- **January 14, 2020:**  Plaintiffs filed the instant matter giving notice to Defendants, including 3M, that Plaintiffs intend to seek recovery for PFAS contamination in Michigan from industrial, consumer, and other sources, excluding any contamination from AFFF.  Plaintiffs' Complaint included several citations to MPART's publicly-available website that listed (and continues to list) all sites in Michigan at which MPART has discovered PFAS contamination. (*See generally* Compl., ECF No. 1–3.);

- **August 20, 2020:**  Plaintiffs filed a separate Mil-Spec AFFF Complaint giving notice to Defendants, including 3M, that Plaintiffs intend to seek recovery for Mil-Spec AFFF contamination in Michigan. (*See generally* Ex. A)  Defendants transferred this case to the MDL without objection from Plaintiffs.

- **August 21, 2020:**  The parties attended oral argument before the Kent County Circuit Court to discuss Defendants' then pending motions for summary disposition regarding the PFAS complaint presently at issue.  During the hearing, counsel for Daikin America, speaking on behalf of all Defendants, including 3M, represented to Judge George Quist that Defendants believe Plaintiffs will be unable to distinguish which contamination in Michigan was caused by AFFF from that caused by PFAS.  (ECF No. 1-16, PageID.3325–3326);

8

- **September 25, 2020:**  Plaintiffs served upon 3M a copy of their Initial Disclosures in this matter, in which Plaintiffs identified a fact witness who has knowledge of PFAS contamination in Michigan including but not limited to "knowledge of the following contamination sites: RACER Willow Run." (*See* Ex. D—Plaintiffs Initial Disclosures at pgs. 23-24, No. 67.)  3M knew by this date, at the latest, that RACER Willow Run was a PFAS site at issue in this litigation and, as set forth below, 3M was informed no later than January 8, 2021 that this site also contains Mil-Spec AFFF contamination.

- **October 9, 2020:**  3M filed its Answer to the instant PFAS Complaint alleging as an affirmative defense that "3M is immune from suit under the government-contractor defense."  (3M's Answer, ¶ 10, ECF No. 1–3, PageID.373.)  3M further stated it is "not responsible or liable for any acts or omissions undertaken by or at the direction of any governmental authority or agency" and that its product "conformed to government standards."  (*Id* at ¶ 10, PageID.338; *id.* at ¶ 59, PageID.344.)

- **December 4, 2020:** During a scheduling conference, counsel for Plaintiffs informed Defendants that in this PFAS litigation, Plaintiffs are seeking recovery for "all PFAS contamination in the state" (Transcript, ECF No. 1-12, PageID.1217) and that Plaintiffs "have an MPART website that identifies all the contaminated sites . . . We

have test data for all of them.  And I think the Defendants can figure
that out. . . I don't believe the Defendants are going to do that, but
that's their issue." (*Id.* at PageID.1218.)  Sites disclosed in Plaintiffs'
Initial Disclosures, including the Lake St. Clair Watershed, discuss
the potential presence of AFFF on the MPART website.

- **December 23, 2020:** 3M served discovery on Plaintiffs seeking
documents "concerning the co-mingling of PFAS contamination from
AFFF." (*See* Ex. E—3M's First Set of Interrogatories to Plaintiffs, at
No. 17.)

- **January 8, 2021:** Plaintiffs filed and served upon 3M Plaintiffs'
"Fact Sheet" in the Mil-Spec AFFF case stating, in relevant part, that
the State has identified Mil-Spec AFFF at certain sites, including but
not limited to RACER Willow Run.  (See Ex. F—Plaintiffs Fact Sheet
at Section III, No. 16.)

- **January 8, 2021:** 3M filed its Notice of Non-Party Fault in this
matter, identifying numerous sites and parties known by 3M to have
released AFFF.  By way of example, 3M disclosed that ESCO
Company is a non-party at fault who is liable for its release of AFFF
at the Former ESCO Site. (3M's Not. of Non-Parties at Fault, ECF
No. 1-10, PageID.1025.)  Plaintiffs previously disclosed Former ESCO
as a site at issue in this PFAS litigation in their September 25, 2020
Initial Disclosures.  (*See* Ex. D at pg. 18, No. 46.)

- **January 28, 2021:**  Plaintiffs served on 3M discovery responses to Defendant Daikin America, Inc.'s written discovery requests in which Michigan repeated what it had previously disclosed— that Michigan believes the RACER Willow Run site has both AFFF and PFAS contamination.  Plaintiffs also reaffirmed, as it had on numerous other occasions throughout this litigation, that Plaintiffs only seek recovery for the portion of damages caused by PFAS and do not seek any recovery for damages cause by AFFF contamination.

- **March 1, 2021:**  3M filed its Notice of Removal alleging it had no idea until Plaintiffs' January 28, 2021 interrogatory response that there may be sites at issue that contain both AFFF and PFAS.

## ARGUMENT

### I.    Legal standard.

As the parties seeking removal, 3M bears the burden of establishing federal court jurisdiction, *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006), and demonstrating that removal is proper.  28 U.S.C. § 1441(a).  The Court "shall" remand cases in which it lacks jurisdiction.  28 U.S.C. § 1447(c).

### II.    3M's Notice of Removal is untimely.

Putting aside the lack of viability of 3M's alleged government contractor defense, 3M's Notice of Removal is untimely because 3M had notice of its purported grounds for removal well before Plaintiffs served their discovery responses on January 28, 2021.

11

"If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may <u>first</u> be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added).  If, however, the case stated by the initial pleading is removable, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id.* § 1446(b)(1).  The 6th Circuit has held that "the strict time requirement for removal in civil cases is not jurisdictional; rather, it is a strictly applied rule of procedure and untimeliness is a ground for remand so long as the timeliness has not been waived." *Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993) (citations omitted); s*ee also City of Albion v. Guar. Nat'l Ins. Co.*, 35 F. Supp. 2d 542, 544 (W.D. Mich. 1998) ("Although not jurisdictional, the thirty-day period for removal is mandatory and must be strictly applied.").

3M filed its Notice of Removal on March 1, 2021, more than one year after Plaintiffs filed their Complaint.  3M's notice is untimely because: (1) 3M knew well before January 28, 2021 that RACER Willow Run and other sites at issue in this litigation may have both AFFF and PFAS contamination; and (2) 3M was even aware of its purported basis for removal upon receipt of the Complaint.

     **A.**    **3M knew before January 28, 2021 that Plaintiffs intend to seek recovery for PFAS contamination at RACER Willow Run, among other sites, and that those same sites also contain separate AFFF contamination.**

Although 3M argues that the presence of both AFFF and PFAS at the same site is new information that supports removal of this case over a year after Plaintiffs filed their Complaint, 3M has known since before January 28, 2021 that certain sites at issue in this case may have both AFFF and PFAS contamination.  3M primarily relies on information concerning RACER Willow Run—a site 3M alleges it had no idea was at issue in this case or that it contained AFFF contamination until Plaintiffs served their January 28 discovery responses.  (Not. of Removal at ¶ 7, ECF No. 1, PageID.5.) However, RACER Willow Run was identified as a site at issue in this this case in Plaintiffs' September 25, 2020 Initial Disclosures.  (*See* Ex. D—Plaintiffs Initial Disclosures at pgs. 23-24, No. 67.)

3M also had notice before January 28, 2021 that MPART suspects that RACER Willow Run, among other sites, has been contaminated with AFFF in addition to PFAS.  In Plaintiffs' January 8, 2021 Fact Sheet served on 3M in Plaintiffs' Mil-Spec AFFF case, Plaintiffs disclosed to 3M that Michigan identified Mil-Spec AFFF at the RACER Willow Run site. (See Ex. F—Plaintiffs Fact Sheet at Section III, No. 16.)[1] Therein, Plaintiffs informed 3M that the State "seeks to remedy environmental and natural resource damages caused by PFAS from Mil-Spec AFFF." (*Id*.).  RACER Willow Run was listed as one of sixteen Mil-Spec AFFF Sites. (*Id*.)  Although 3M conspicuously omitted any reference to Plaintiffs' Fact Sheet in its Notice of Removal,

---

[1] This pleading was served on 3M in Plaintiffs' related Mil-Spec AFFF case currently pending in MDL No. 2873.  This document was filed in that case subject to a protective order entered by Judge Gergel.  As the party afforded the confidentiality protection of this filing, Plaintiffs waive their confidentiality for purposes of including in this Brief.

3M recently filed a Motion to Transfer this case to MDL No. 2873 in which 3M not only relied on Plaintiffs' Fact Sheet in support of its Motion, but 3M misrepresented that the Fact Sheet was cited to and relied on in the Notice of Removal presently at issue:

> On March 1, 2021, Defendant 3M Company removed this action to federal court based on federal officer jurisdiction. 3M averred that Plaintiffs had claimed in their putative MilSpec AFFF action in the MDL that the contamination at the RACER Willow Run site that Plaintiffs put at issue in this case arises, at least in part, from MilSpec AFFF . . . and that 3M intended to assert a federal government contractor defense to Plaintiffs' claims. [See Ex. G—3M's Motion to Transfer, at pg. 7–8; see also id. at pgs. 10–11 (discussing Plaintiffs' verified responses in the Fact Sheet).]

The entire basis for 3M's untimely removal is its allegation that it was just informed of the presence of both AFFF and PFAS contamination at RACER Willow Run on January 28, 2021.  That is patently false.  That information was explicitly conveyed to 3M by January 8, 2021, at the absolute latest, through Plaintiffs' Initial Disclosures and Plaintiffs' Mil-Spec Fact Sheet.  Based on the date on which 3M received Plaintiffs' Fact Sheet in the Mil-Spec matter, 3M would have had to remove this matter by February 7, 2021.

Although 3M's primary basis for alleging the existence of the federal officer jurisdiction is the Willow Run site, 3M knew well before January 28, 2021 that other sites at issue may be contaminated with both PFAS and AFFF.  On the same January 8, 2021 date, 3M also filed its Notice of Non-Party Fault admitting that 3M knew of the presence of AFFF contamination at other sites identified in Plaintiffs' September 28, 2020 Initial Disclosures.  By way of example, 3M disclosed ESCO Company as an alleged non-party at fault who is liable for its release of AFFF at the Former ESCO

14

Site. (ECF No. 1-10, PageID.1025–26.)  Plaintiffs had previously disclosed Former

ESCO as a site at issue in this PFAS litigation in their September 25, 2020 Initial

Disclosures.  (Ex. D, at pg. 18, No. 46.)

      3M knew of the exact information that serves as the foundation for its entire

removal by January 8, 2021, at the very latest—over 30 days before 3M removed this

action.  As the Court in *In re Welding Fume Prods. Liab. Litig.*, 606 F. Supp. 2d 716,

721 (N.D. Ohio 2009) explained:

> The factual basis upon which defendants relied to remove the five-plaintiff case in this instance was receipt of a paper showing that one of the plaintiffs (Mitchem) welded on a United States Navy ship, implicating the military contractor defense. But defendants had received precisely the same thing -- a paper showing that one of the plaintiffs (Thomas) welded on a United States Navy ship, implicating the military contractor defense -- months earlier, and did not remove the five-plaintiff case. Having failed to file their notice of removal within 30 days of their first receipt of this "other paper," defendants did not comply with the requirements of 28 U.S.C. §1446(b).

*See also Olds v. Michigan Bell Tel. Co.,* 1987 U.S. Dist. LEXIS 15680, *13 (E.D. Mich.

1987) (holding removal was untimely because "[t]he complaint has not been amended,

nor has a new pleading changed facts important to the posture of the case. Nor is

there an important federal interest."); *Bence v. Cottman Transmission Sys.*, No. 5:03-

CV-26, 2003 U.S. Dist. LEXIS 9671, *8 (W.D. Mich. May 19, 2003) (removal untimely

where initial pleading was removeable); *Hauck v. Advance Auto Parts,* 2013 U.S. Dist.

LEXIS 34226, at *3 (S.D.N.Y. Mar. 12, 2013) (removal untimely because information

in interrogatory response was not new).

      Through their Initial Disclosures, Plaintiffs additionally disclosed the presence

of contamination from both AFFF and PFAS at various sites by disclosing relevant

documents and information on Michigan's MPART website.  For instance, Plaintiffs

disclosed the Lake St. Clair Watershed as a PFAS contamination site, further

informing that Defendants may find relevant documents and information "located on

the MPART website at https://www.michigan.gov/pfasresponse," including "test data,

correspondence, communications, emails, and investigation materials related to each

site." (Ex. D at pg. 25–26, No. 75.)  The MPART webpage for the Lake St. Clair

Watershed states that at least two AFFF sources of contamination to Lake St. Clair

have been identified—Selfridge Air National Guard Base and Axalta Coating

Systems.[2]  Such documents and other information provided during discovery

constitute "other paper" that start the removal clock.  *Ritchie v. Williams*, 395 F.3d

283, 287 n.2 (6th Cir. 2005) (production of a document during discovery constitutes an

"other paper").

Likewise, during a scheduling conference on December 4, 2020, counsel for

Plaintiffs informed Defendants that in this PFAS litigation, Plaintiffs are seeking

recovery for "all PFAS contamination in the state" including "anything . . . that is on

the MPART website." (ECF No. 1-12, PageID.1217.)  Plaintiffs further explained they

"have an MPART website that identifies all the contaminated sites . . . We have test

data for all of them.  And I think the Defendants can figure that out. . . I don't believe

the Defendants are going to do that, but that's their issue." (ECF No. 1-12,

PageID.1218.)  The Sixth Circuit has recognized that hearing transcripts are "other

---

[2] Michigan Department of Environment, Great Lakes, and Energy (EGLE), Clinton
River/Lake St. Clair Watershed, MICHIGAN PFAS ACTION RESPONSE TEAM,
https://www.michigan.gov/pfasresponse/0,9038,7-365-86511_95792_95797-510274--
,00.html (accessed March 9, 2021).

paper" that start the 30-day clock. *Berera v. Mesa Med. Group, PLLC*, 779 F.3d 352, 365 (6th Cir. 2015).

Plaintiffs' disclosure of facts and information regarding RACER Willow Run, Former ESCO, the Lake St. Claire's Watershed, and the MPART website are merely representative instances in the record that evidence 3M's knowledge of both AFFF and PFAS contamination within Michigan. In addition to these instances, as set forth below, 3M's own conduct supports the conclusion that 3M believed the initial complaint to be removeable under 28 U.S.C. § 1446(b)(1).

### B. 3M had knowledge of its alleged basis for removal from the date Plaintiffs filed the initial Complaint.

3M was aware of its alleged basis for asserting a federal government contractor defense when Plaintiffs filed the Complaint over a year ago. Indeed, 3M raised the federal government contractor defense in its Answer. (3M's Answer at ¶ 10, ECF No. 1–3, PageID.373.) 3M either raised this very specific affirmative defense frivolously, or believed it had some factual basis for asserting the defense at the time Plaintiffs filed their Complaint. As at least one district court has explained:

> [Defendant] also expressly invoked the colorable federal defenses required for removal . . . Where "the plain language of . . . the answer is quite broad, and separate affirmative defenses asserted in the answer refer to [the removal grounds]," the argument that the answering party was at the time unaware of the very grounds it was arguing is disingenuous at best. [*Dietrich v. Autozone W., Inc.* No. LA CV19-04291, 2019 U.S. Dist. LEXIS 187651, at *26-29 (C.D. Cal. Oct. 28, 2019)].

*See also Groesbeck Invs., Inc. v. Smith*, 224 F. Supp. 2d 1144, 1150 (E.D. Mich 2002) ("[Defendant] further specifically asserted in its Answer the Plaintiff's failure to establish waiver of sovereign immunity under 28 U.S.C. § 2410 -- the statute

17

authorizing suits to quiet title against the Government -- as an affirmative defense. Thus, this is not a case like Harmony Homes where the Government would have had 'to infer the appropriate statute' providing federal question jurisdiction.").

Regardless of 3M's independent bases for asserting this defense, it was apparent from the face of the Complaint that distinguishing PFAS contamination from AFFF contamination would be an issue in this case.  As an example, Plaintiffs' Complaint provides that they intend to recover damages in this action for PFOA and PFOS contamination from non-AFFF sources.  (Compl. at ¶17, ECF No. 1-2, PageID.40–41.)  Although Plaintiffs explicitly stated that AFFF contamination is not at issue in this matter, Plaintiffs recognized in their Complaint that AFFF is a potential source of PFOA and PFOS contamination.  (*Id.* at ¶19.)  As such, 3M had notice—from the date the Complaint was filed—of the potential defense that the PFOA and PFOS came from AFFF rather than another non-AFFF source.  In fact, 3M stated in its Notice of Removal, "MilSpec [AFFF] . . .  includes PFOA and PFOS, some of the very PFAS compounds at issue in the Complaint here."  (ECF No. 1, PageID9–10.)

After filing the Complaint at issue, Plaintiffs filed a separate complaint against 3M for Mil-Spec AFFF contamination in Michigan on August 20, 2020.  At the very latest, 3M knew when Plaintiffs filed their Mil-Spec Complaint that both contaminants were present in Michigan. As alleged by 3M in its Motion to Transfer this case to the MDL:

> [T]ransfer is even more plainly warranted here because these same
> Plaintiffs have brought two other related actions that have already
> been transferred to the MDL and in which, just as in this action,

Plaintiffs broadly seek recovery for PFAS contamination "*throughout the State*" of Michigan. Indeed, all three complaints are based on substantively identical allegations of purported contamination of groundwater, surface waters, and other natural resources throughout Michigan with the same PFAS chemicals.

* * *

Indeed, Plaintiffs' allegations in this case that PFAS "continue[s] to move through the environment and contaminate and injure State natural resources and property" (Ex. 1, Complaint ¶ 448) is simply inconsistent with Plaintiffs' attempt to segregate AFFF and non-AFFF sites. Likewise, Plaintiffs' claims in this case to recover for injuries to "fish and other wildlife," which similarly move through the environment, are also inconsistent with Plaintiffs' attempt to segregate AFFF and non-AFFF sites.  [Ex. G, pgs. 14–16.]

As 3M acknowledges, both the PFAS complaint and Mil-Spec AFFF complaint discuss contamination "throughout Michigan" from these soluble contaminants that "move through groundwater, surface waters, soils, and other natural resources," causing new damages as they spread across Michigan.  (Compl. at ¶448, ECF No. 1–2, PageID.119; *see also* Ex. A at ¶ 294.)  3M knew when Plaintiffs' filed their Mil-Spec AFFF complaint that proving the source of contamination, including that from PFOA and PFOS, would be disputed.  *See, e.g., Thomas v. CVS Health Corp.*, No. 2:19-cv-04283-R-FFM, 2019 U.S. Dist. LEXIS 129788, at *5-8 (C.D. Cal. Aug. 1, 2019) (complaint in another case was "other paper" that started the 30-day clock because "the cases involve essentially the same facts, and the same attorneys have represented Defendants in [both actions]").

3M's allegation it did not know of the presence of AFFF and PFAS in Michigan is also irreconcilable with 3M's own conduct throughout this litigation.  On August 21, 2020, counsel for Daikin America, speaking on behalf of all Defendants, including 3M,

represented to the Michigan Circuit Court that Defendants' believe Plaintiffs will be unable to distinguish contamination caused by AFFF from that caused by PFAS:

> And now [Plaintiffs] have this additional problem that is in our complaint here, but is highlighted by the fact that they filed this new complaint in the MDL that they have to separate which PFOA in the waters of Michigan came from firefighting foam, which by the way is the principle basis in which these chemicals get into groundwater, from that which didn't come from it. That's -- that's a -- I think a -- a problem of their own out of greed. But they've split the cause of action." [ECF No. 1-16, PageID.3325–3326.]

Statements made by a party in open court may be relevant to the Court's inquiry as to the timeliness of removal under § 1446.  *See, e.g., Pureflex, Inc. v. Semmelmeyer-Corby Co.*, 2001 U.S. Dist. LEXIS 10123, *13 (W.D. Mich. 2001) (reciting cases holding that statements made by defense counsel in open court are relevant to defendant's knowledge of facts for removal).  Likewise, on December 23, 2020, 3M served discovery on Plaintiffs related to alleged "co-mingling" of AFFF and PFAS at various contamination sites.  (See Ex. E—3M's First Set of Interrogatories to Plaintiffs, at No. 17.)

By their own admission and in their Answer, 3M knew distinguishing between AFFF and PFAS was going to be a debated issue in this matter from the moment Plaintiffs filed their Complaint.  That was the very reason 3M asserted the government contractor defense in its Answer.  If 3M had any uncertainty, Plaintiffs explicitly informed 3M through pleadings that many sites at issue in this litigation, including RACER Willow Run, contain both AFFF and PFAS contamination. Ignoring these facts, 3M removed this case on the false assertion it was unaware of the presence of both PFAS and AFFF in Michigan, including at RACER Willow Run,

until Plaintiffs served their January 28, 2021 discovery responses.  3M's fiction should

not persuade the Court and this case should be remanded.

> **C.    Allowing 3M's untimely removal would significantly delay the proceedings and prejudice Plaintiffs while providing 3M the inequitable benefit of changing forums because the case is not proceeding in 3M's favor.**

Removal at this late juncture will delay the proceedings to 3M's advantage and

substantially prejudice Plaintiffs.  3M has been aware of its dubious basis for

removing this case to federal court – asserting a federal government contractor

defense – from the time it received the Complaint in January 2020.  As discussed

above, 3M was further informed on multiple occasions after Plaintiffs filed the

Complaint.  3M removed this case from 3M's chosen venue in Kent County to federal

court because the case was not proceeding in its favor.

The 30-day time limitation for removal in 28 U.S.C. § 1446(b) serves two

purposes.  First, it "deprive[s] the defendant of the undeserved tactical advantage

that he would have if he could wait and see how he was faring in state court before

deciding whether to remove the case to another court system."  *Hamid v. Aircraft*

*Serv. Int'l,* No. 08-CV-10973, 2008 U.S. Dist. LEXIS 29246, *17-18 (E.D. Mich. 2008).

In other words, it "prevents a second bite at the jurisdictional apple if a defendant

(belatedly) perceives that the case is proceeding other than to his liking." *McCraw v.*

*Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994) (quoting *Gorman v. Abbott Laboratories*,

629 F. Supp. 1196, 1199 (D.R.I. 1986).  Secondly, the time limit minimizes the delay

and waste of resources involved in starting a case over in federal court after

substantial proceedings have taken place in state court. *Hamid,* No. 08-CV-10973,

2008 U.S. Dist. LEXIS 29246, *17-18.  Removal at this late juncture would contravene both purposes by (1) providing 3M with an inequitable and undeserved tactical benefit of changing forums because the case is not proceeding in 3M's favor, and (2) delaying the case and wasting resources to Plaintiffs' prejudice.

Kent County is 3M's chosen venue. Plaintiffs initially filed this Complaint in Washtenaw County state court. On February 14, 2020, 3M moved for a transfer of venue, selecting Kent County as the venue of its choice. On March 11, 2020, 3M's request to transfer venue to Kent County was granted.  Since its transfer to Kent County, Plaintiffs, Defendants, and the Kent County court have spent considerable time, effort, and resources in significantly advancing this proceeding.  The Kent County court has carefully considered and ruled on lengthy and involved dispositive motions, held multiple status conferences, established a fact discovery deadline and a regular status conference schedule, and resolved disagreements concerning the parties' ESI protocol and protective orders.

3M removed this matter to federal court from its chosen venue only after losing its motion for summary disposition and after failing to obtain the lengthy fact discovery timeline that it requested.  On January 27, 2021, for example, 3M along with other defendants requested a minimum fact discovery deadline of January 23, 2023.  Judge Quist entered a Case Management Order setting the fact discovery deadline in this case for January 31, 2022.

This is exactly the kind of delay that the 30-day limitation period is specifically designed to prevent. *See Hamid,* 2008 U.S. Dist. LEXIS 29246 at *18; *Gorman*, 629 F. Supp. at 1199; *Tolley v. Monsanto, Co.*, 591 F. Supp. 2d 837, 850 (S.D.W. Va. 2008)

22

("Moreover, § 1446's time requirement is specifically designed to protect against such undue delays and the consequent waste of judicial resources.").  Allowing removal now would reward 3M's "wait and see" defense approach by allowing it to forum shop simply because the venue it chose has not given it the results for which it had hoped.

3M's late removal constitutes deliberate gamesmanship that prejudices Plaintiffs and would result in the delay and waste the removal time limit is designed to prevent.  *See Hamid*, 2008 U.S. Dist. LEXIS 29246 at *18; *Tolley* F. Supp. 2d at 850 ("[I]t is very clear that a defendant may not manipulate removal statutes to strategically delay litigation.").  Remand should be granted where the case has been pending in the state court for some time and significant litigation progress has been made. *Hamid*, 2008 U.S. Dist. LEXIS 29246 at *18 (granting remand where matter had been pending in state court for 133 days during which "the state court heard and disposed of motions, held a status conference, and set dates concerning discovery, case evaluation, and the settlement conference").  Removal at this stage of the litigation not only provides 3M with a strategic advantage at Plaintiffs' expense, it is also in direct opposition to judicial policies of expeditious resolutions and protecting judicial resources from frivolous waste.

The prejudicial effects of 3M's untimely removal to Plaintiffs are many, but perhaps most significant is the effect the delay will have on Michigan's response to the PFAS crisis, which endangers the health and welfare of Michigan's residents, wildlife, environment, and natural resources on a daily basis.  Importantly, this matter had been on track for a reasonably timely resolution, which would allow Michigan to proceed with protecting its residents and its environment.  3M should not

23

be allowed to frustrate these efforts with an untimely and meritless removal.  This

matter must be remanded to Kent County.

### III.   3M does not have a viable federal government contractor defense because Plaintiffs are not seeking any damages in this litigation related to AFFF.

Apart from its untimeliness, 3M cannot establish it has a colorable government

contractor defense.  In support of its Notice of Removal, 3M fundamentally

misrepresented that Plaintiffs, through their interrogatory responses, have changed

their position to seek damages in this case for AFFF contamination.  More

specifically, 3M falsely asserted, "Plaintiffs are seeking to recover in this case for

alleged PFAS contamination from both alleged non-AFFF and AFFF sources."  (Not.

of Rem., ¶7, ECF No. 1, PageID.2.)  This baseless assertion is unsupported by the

entirety of the record, including the very interrogatory response relied on by 3M, in

which Plaintiffs consistently stated they do *not* seek any recovery for damages caused

by AFFF in this action, even at sites where both PFAS and AFFF contamination may

be present.  Because the entire foundation of 3M's removal is premised on a blatant

misrepresentation, 3M has no basis for asserting a government contractor defense

and this case should be remanded.

### A.   Plaintiffs filed separate complaints for Mil-Spec AFFF contamination and PFAS contamination, and have consistently limited their recovery in this action to damages caused by non-AFFF sources of PFAS.

Michigan initiated multiple legal actions to hold different companies

accountable for their manufacture, distribution, and other business conduct related to

24

PFAS, PFAS-containing products, and AFFF.  Michigan first filed the instant suit in January 2020 against PFAS manufacturers to recover costs and damages related exclusively to PFAS contamination from industrial and other non-AFFF sources.  The Complaint explicitly disclaimed any recovery for natural resource damages and other injury caused by AFFF contamination of any kind, whether Commercial or Mil-Spec. (Compl. at ¶ 19, ECF No. 1–2, PageID.43.)

Subsequently, in August of 2020, Michigan filed a complaint against Mil-Spec AFFF manufacturers, including 3M, concerning contamination caused exclusively by Mil-Spec AFFF.  (*See generally* Ex. A.)  The Mil-Spec Complaint excluded any claim for damages related to PFAS or Commercial AFFF.  (*Id.* at ¶ 27.)  Michigan filed the Mil-Spec case in federal court as Plaintiffs asserted a federal claim under the Resource Conservation and Recovery Act.

There is no overlap in recovery between the two cases—the PFAS complaint seeks recovery for damages exclusively caused by PFAS and the Mil-Spec complaint seeks recovery for damages exclusively caused by Mil-Spec AFFF.  Plaintiffs have consistently maintained this position throughout the entirety of this litigation, including but not limited to the following instances where Plaintiffs expressly stated they do not seek any recovery in this litigation for AFFF contamination:

- **Jan. 14, 2020 Complaint**: "PFAS as defined in this Complaint does *not* include aqueous film-forming foams (AFFFs) of any kind or type containing PFOA and/or PFOS, or otherwise."  (Compl. at ¶ 19, ECF No. 1–2, PageID.43.)

- **August 21, 2020 Transcript:** During oral argument, Plaintiffs' counsel informed the Court, "[o]ur Complaint specifically excluded any allegations related to AFFF. And as I told the Court, I think, last month, we are going to file different complaints on different

products against different defendants over time." (ECF No. 1-16, PageID.3303.)

- **Sep. 26, 2020 Initial Disclosures:** "PFAS as defined in this Complaint does _not_ include aqueous film-forming foams (AFFFs) of any kind or type containing PFOA and/or PFOS, or otherwise." (*See* Ex. D at pg. 2.)

- **Jan. 28, 2021 Plaintiffs' Responses to Daikin's Interrogatories:** In response to the very interrogatory relied on by 3M as the sole basis for its removal, Plaintiffs stated:

  o "Plaintiffs object to this subpart of the Interrogatory to the extent that it seeks discovery regarding PFAS contamination resulting from [AFFF]. This litigation does not involve AFFF contamination." (ECF. No. 1–9, PageID. 619 & 626.)

  o Notwithstanding the lack of relevance of AFFF in this litigation, Plaintiffs provided a chart identifying sites that are contaminated with AFFF, PFAS, or both—information that came straight from the MPART website. After providing this information, Plaintiffs repeated, "[i]n this litigation, Plaintiffs seek to recover damages _for PFAS contamination_ at the 'sites' and 'areas of interest' listed above." (ECF. No. 1–9, PageID. 625.)

Contrary to 3M's misrepresentation of Plaintiffs' response, Plaintiffs expressly disclaimed any recovery for AFFF and did not state that Plaintiffs "are seeking to recover in this case for alleged PFAS contamination from both alleged non-AFFF and AFFF sources." (Not. of Rem., ¶7, ECF No. 1, PageID.2.)  Plaintiffs simply responded to Daikin's request that Plaintiffs identify AFFF sites and informed that Plaintiffs only seek to recover for PFAS and do not seek recovery for any AFFF identified. This is entirely consistent with Plaintiffs' Complaint; Plaintiffs' Initial Disclosures; Plaintiffs' comments at hearing; and every other representation made by Plaintiffs in this case.

26

3M's reliance on Plaintiffs' denial of Daikin's poorly-worded requests for admission is equally without substance. Specifically, 3M argues:

> Although Plaintiffs tried to argue in their discovery responses that '[t]his litigation does not involve AFFF contamination' . . . Plaintiffs denied a Request to Admit that 'Defendants cannot be held liable for any PFAS contamination for which Plaintiffs seek Relief unless [Plaintiffs] prove that the contamination is not attributable . . . to the manufacture, sale, storage, or use of AFFF." (ECF No. 1, PageID.10–11.)

Plaintiffs' burden in this case is to prove the damages were caused by PFAS. 3M is free to argue that all or part of the contamination at any site is caused by AFFF rather than PFAS—but that will be 3M's burden to prove, not Plaintiffs' burden to refute. Hence Plaintiffs' denial of Daikin's request for admission that intentionally mischaracterizes Plaintiffs' burden in this action. The reason 3M so desperately seeks to misconstrue Plaintiffs' interrogatory responses and denials is apparent. The federal government contractor defense is only relevant if Plaintiffs intend to seek recovery for damages proven to be caused by AFFF. As consistently stated by Plaintiffs, they will only seek recovery in this action for damages caused by non-AFFF sources of PFAS contamination. As set forth below, the presence of AFFF in Michigan may limit the damages recoverable in this PFAS action, but it does not give rise to a colorable federal government contractor defense.

**B. Because Plaintiffs are not seeking damages in this case for contamination caused by any AFFF, 3M does not have a viable federal government contractor defense.**

Under no scenario can the federal contractor defense apply to the claims against 3M in this case, as it does not concern any contamination caused by AFFF.

PFAS contamination from industrial and consumer sources is not the same as contamination from AFFF.  The Joint Panel on Multidistrict Litigation appears to recognize this distinction and has already determined that this matter is not appropriate for inclusion in the AFFF MDL.  (*See* Ex. C.)[3]  3M has not and cannot satisfy the required elements that would entitle it to removal under the federal officer removal statute.  This court therefore lacks federal officer jurisdiction over this matter and must remand this case to state court.

**1.    3M was not "acting under" the direction of a federal officer or agency for purposes of the federal officer removal statute when it designed, manufactured, or supplied PFAS for consumer and industrial purposes.**

3M was *not* "acting under" the direction and control of any federal officers, including the U.S. Navy or Department of Defense, when it designed, manufactured, and/or supplied PFAS products for consumer and industrial purposes.  This fundamental fact obviates the federal contractor defense.  3M, nonetheless, attempts to manipulate Plaintiffs' well-pleaded complaint to include contamination that is simply not at issue in this case.  3M was not "acting under" a federal officer when it produced the PFAS at issue in this matter.

A private contractor can only be "acting under" a federal officer if it is "helping the Government to produce an item that it needs."  *Watson v. Philip Morris Co., Inc.*,

---

[3] *See also In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873, Doc. 585, pg. 3 (J.P.M.L. Feb. 5, 2020) (attached as Ex. B) ("We have not . . . transferred to the MDL actions that do not contain any allegations or claims relating to AFFF use. Indeed, we recently denied transfer of an action, Middlesex, in which the claims were 'directed at 3M and its manufacture, marketing, and sales of PFOS and PFOA, not its manufacture of AFFF products.'").

551 U.S. 142, 153-54 (2007).  Only where a private contractor is performing a job that "in the absence of a contract with a private firm, the Government itself would have had to perform," is the contractor acting under a federal officer.  *Id.*  Mil-Spec AFFF is simply not at issue in this complaint.  3M and the other defendants did not produce the PFAS at issue in this complaint—PFAS used in industrial and consumer applications— for the federal government.  3M was, therefore, not acting under a federal officer when it produced PFAS for uses such as Scotchgard.

The cases cited by 3M in support of its removal illustrate what is required to satisfy this element and why this element cannot be satisfied in this matter.  In *Isaacson*, for example, the court found that defendants were acting under a federal officer when they produced Agent Orange for the federal government pursuant to contracts with the federal government.  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008).  The court in *Ayo* analyzed only whether 3M acted under a federal officer when producing Mil-Spec AFFF.  *Ayo v. 3M Co.*, No. 18-CV-0373, 2018 U.S. Dist. LEXIS 170996, *20 (E.D.N.Y. Sep. 30, 2018).

This court's decision in *Nessel v. Chemguard, Inc.* also fails to offer any support for 3M's contorted position.  That case involves contamination caused by AFFF that was not produced in accordance with military specifications.  This case involves contamination caused by entirely different products produced for industrial and consumer purposes, not for use in firefighting.  Whether 3M and the defendants acted under a federal officer in producing Mil-Spec AFFF has no bearing on the applicability of the federal officer removal statute to this case.  Mil-Spec AFFF is not at issue in this complaint.

3M's PFAS products, like Scotchgard, that it produced for industrial and consumer use were never produced for the federal government or under the federal government's specifications, nor have these products ever been critical to any federal government mission. The U.S. military's Mil-Spec performance and quality control specifications that apply to Mil-Spec AFFF were developed long after 3M and the defendants had begun producing PFAS for industrial and consumer products. Those specifications do not apply whatsoever to the design, production, sale, or use of industrial and consumer PFAS products. Industrial and consumer PFAS products are *not* products that the federal government would have had to create in 3M's absence because industrial and consumer PFAS products were not used by, or made to carry out, the duties or tasks of the U.S. Government, Department of Defense, or military. 3M has not satisfied and cannot satisfy the "acting under" requirement of § 1442(a)(1).

## 2. 3M did not produce and/or sell non-AFFF PFAS products under color of federal office.

The federal officer removal statute does not confer jurisdiction on the federal courts unless it can be demonstrated that a defendant performed the actions for which it is being sued "under color of [federal] office." *Jefferson County v. Acker,* 527 U.S. 423, 431 (1999). 3M cannot satisfy this element as it cannot "show a nexus, a causal connection between the charged conduct and the asserted official authority." *Id.* (internal quotations and citations omitted). In other words, 3M, as the removing party, would have to be able to show that it is being sued because of the acts it performed at the direction of the federal officer. *See Watson,* 551 U.S. at 148; *City of*

30

*Cookeville v. Upper Cumberland Elec. Membership Corp.,* 484 F.3d 380, 391 (6th Cir.2007). It cannot.

3M cites to this court's decision in *Nessel v. Chemguard* to attempt to procure support for this element.  In that decision, this court relied on *Bennett* to conclude that, "[e]ven if plaintiffs are later able to demonstrate that their injuries occurred 'because of an act not contemplated by [the federal contract], it is sufficient for [removal] purposes that [execution of the federal contracts] gave rise of the alleged cross-contamination.'"  (ECF No. 1–5, PageID.372.)  The *Bennett* decision, however, fails to offer any support for removal.  This court's reasoning in *Nessel v. Chemguard* does not, and cannot apply to this case, which does not concern any contamination from AFFF of any kind.

In *Bennett*, the federal government (Federal Aviation Administration ("FAA")) hired a mold remediation specialist to remediate mold in a traffic control tower.  The plaintiffs claimed that the mold remediation specialist negligently performed its contract with the FAA and exacerbated the mold contamination.  The mold remediation specialist removed the case to federal court, arguing that it was acting under federal officers when it performed the mold remediation contract.  The plaintiffs argued that the mold remediation specialist was not acting under a federal officer because the actions that exacerbated the mold contamination constituted deviations from the contract's performance provisions.  The court ultimately found that the FAA's contract with the mold remediation specialist gave rise to the conduct that exacerbated the mold contamination.  In essence, the complained of conduct was

31

performed in furtherance of (if not in compliance with) the mold remediation contract with the FAA.  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir. 2010).

In contrast to the decision in *Bennett*, 3M's design, manufacture, and/or supply of industrial and consumer PFAS products—which is the cause of the State's injuries and the basis for which 3M is being sued in this case—would have occurred in the absence of a military specification for Mil-Spec AFFF.  This is readily apparent from the undisputed fact that 3M had been producing commercial and industrial PFAS products for decades before PFAS were used in AFFF and the federal government developed the military specifications for Mil-Spec AFFF.   3M cannot show any causal nexus between any federal officer's instructions as they relate to Mil-Spec AFFF and 3M's design, manufacture, and supply of commercial and industrial PFAS products like Scotchgard.  3M has not and cannot establish the second element of federal officer jurisdiction.

### 3.   3M does not have a colorable claim that the government contractor defense applies to the complaint in this matter.

3M is not entitled to removal unless it can raise a colorable federal defense. For 3M's government contractor defense to be colorable, it must at least appear that (1) the United States approved reasonably-precise specifications for commercial and industrial PFAS; (2) the commercial and industrial PFAS at issue in this complaint conformed to those specifications; and (3) the suppliers warned the United States about the dangers in the use of the commercial and industrial PFAS that were known to the suppliers, but not to the United States.  *Boyle v. United Technologies Corp*, 487 U.S. 500, 501 (1988).  The three requirements limit the scope of the government

contractor defense to those circumstances "where the government has actually participated in discretionary design decisions, either by designing a product itself or approving specifications prepared by the contractor." *In re 3M Combat Arms Earplug Prods. Liab. Litig.,* 474 F. Supp. 3d 1231, 1246 (N.D. Fla. 2020) (citing Harduvel, 878 F.2d at 1316). "Stripped of its essentials, the military contractor's defense under *Boyle* is to claim, '[t]he Government made me do it.'" *In re "Agent Orange" Product Liability Litigation*, 304 F. Supp. 2d 404, 432 (E.D.N.Y. 2004).

3M has not met and cannot meet its burden. 3M does not contend that its commercial and industrial PFAS products were manufactured according to U.S. military specifications. Instead, 3M attempts to amend and alter the scope of Plaintiffs' complaint to include contamination from Mil-Spec AFFF. Of course, Plaintiffs are the only parties that can actually amend the complaint. 3M's Mil-Spec AFFF is not at issue in this case. The federal government has never developed or approved any specification for 3M's commercial and industrial PFAS products, such as Scotchgard. 3M did not need to conform to military specifications when it designed, manufactured, or supplied commercial and industrial PFAS products. 3M, accordingly, never warned the federal government of the dangers of its commercial and industrial products.

Even if further investigation determines that contamination at issue in this complaint was actually caused by Mil-Spec AFFF, the federal contractor defense would not be at issue. The federal contractor defense excuses actions and omissions for which an entity would otherwise be liable. In this instant matter, 3M cannot be liable for damages from Mil-Spec AFFF contamination. 3M and the other defendants

would not need to excuse any of their actions or omissions that resulted in Mil-Spec

AFFF contamination.  Whether the federal government had a hand in how the Mil-

Spec AFFF was produced has absolutely no significance and has absolutely no bearing

on the inclusion of that contamination in this matter.  Granting 3M the benefit of the

federal officer removal statute in this action, which does not seek damages for

contamination caused by *any* AFFF, would extend the statute's benefit beyond its

narrow purpose—which is to protect federal officers from state court hostility to the

federal government. *See Watson*, 551 U.S. at 147-50.  Instead, removal of this action

would reward 3M's gamesmanship and wait-and-see tactics and permit a single

defendant to control the trajectory of the litigation by removing the matter under the

guise of non-existent federal officer jurisdiction.  This court must remand this matter

to the 17th Judicial Circuit Court in Kent County, Michigan.

## IV.   Attorneys' fees are appropriate under the circumstances of Defendant's removal.

Section 1447(c) allows a court to "require payment of just costs and any actual

expenses, including attorney fees, incurred as a result of the removal."  Such an

award is committed to the discretion of the district court and does not depend on any

finding that the removal was in bad faith.  *Daleske v. Fairfield Communities, Inc.*, 17

F.3d 321, 323 (10th Cir. 1994).  An award of fees is appropriate where the removing

party had no objectively reasonable basis for seeking removal.  *Martin v. Franklin

Capital Corp.*, 546 U.S. 132, 141 (2005).

Defendants have no objectively reasonable basis for removing Michigan's

complaint.  In a poor attempt to justify its improper and untimely removal, 3M relied

entirely on the blatant misrepresentation that 3M just now learned of the presence of AFFF at sites in Michigan, further raising the false accusation that Plaintiffs intend to seek damages for AFFF contamination.  As Plaintiffs have shown above, both arguments are factually inaccurate and further fail to establish any legal basis for removal. 3M has no reasonable basis for removing this matter and Plaintiffs should be awarded attorneys' fees and costs.

## CONCLUSION

Actions brought by the Attorney General of a state to protect its residents and its environment under state laws is the paradigmatic example of a case that requires exclusive state court jurisdiction.  For the foregoing reasons, this Court should remand this action back to the Circuit Court for the 17th Judicial Circuit in Kent County, Michigan, and award the State of Michigan its reasonable attorneys' fees and costs incurred as a result of this removal.

Respectfully submitted,

Dana Nessel
Attorney General

Dated: March 19, 2021

/s/ Gregory M. Utter
Gregory M. Utter (P00255)
Joseph M. Callow, Jr. (P00250)
Special Assistant Attorneys General
Keating Muething & Klekamp PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com

Adam J. Levitt
Amy E. Keller (P74015)
Special Assistant Attorneys General
Daniel Rock Flynn
Laura E. Reasons
Adam Prom
DiCello Levitt Gutzler LLC
10 North Dearborn Street, 11th Floor
Chicago, IL 60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
aprom@dicellolevitt.com

Richard W. Fields
Special Assistant Attorney General
Martin F. Cunniff
Fields PLLC
1701 Pennsylvania Ave. NW, Suite 200
Washington, D.C. 20006
fields@fieldslawpllc.com
MartinCunniff@fieldslawpllc.com

36

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to W.D. Mich. LCivR 7.2(b)(ii), Plaintiffs' Brief in Support of Motion to Remand contains 9,381 words excluding the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, affidavits, proof of service, and this Certificate of Compliance.  The undersigned used Microsoft Word for Office 365 to generate this word count.


*/s/ Gregory M. Utter*‍ 
Gregory M. Utter

## PROOF OF SERVICE

I hereby certify that on March 19, 2021, a copy of the foregoing was served on the following parties via email:

---

David M. George (P68812)
John A. Ferroli (P35869)
Paul T. Stewart (P79977)
Dykema Gossett PLLC
Attorneys for Defendant Asahi Plastics North America, Inc.
2723 South State Street, Suite 400
Ann Arbor, MI 48104
(734) 214-7660
dgeorge@dykema.com
jerroli@dykema.com
pstewart@dykema.com

J. Michael Huget (P39150)
Honigman LLP
Attorney for Defendants E. I. DuPont De Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC
315 East Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108
(734) 418-4254
mhuget@honigman.com

---

Lanny Kurzweil (Pro Hac Vice)
Ira Gottlieb (Pro Hac Vice)
McCarter & English, LLP
Attorneys for Defendants E. I. DuPont De Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC
100 Mulberry Street, Four Gateway Center
Newark, NJ 07102
(973) 639-2044
lkurzweil@mccarter.com
igottlieb@mccarter.com

Matthew P. Kennison (P79653)
Riley Safer Holmes & Cancila LLP
Attorney for Defendants E. I. DuPont De Nemours and Company, DowDuPont, Inc., Corteva, Inc., and DuPont DeNemours, Inc.
121 W. Washington, Suite 402
Ann Arbor, MI 48104
(734) 773-4911
mkennison@rshc-law.com

---

Anthony A. Agosta (P57355)
Michael J. Pattwell (P72419)
Zachary C. Larsen (P72189)
Clark Hill PLC
Attorneys for Defendant AGC Chemicals
Americas Inc.
212 East Cesar E. Chavez Avenue
Lansing, MI 48906
(517) 318-3100
aagosta@clarkhill.com
mpattwell@clarkhill.com
zlarsen@clarkhill.com

Robert L. DeJong (P12639)
Joseph M. Infante (P68719)
Miller, Canfield, Paddock and
Stone, P.L.C.
Attorneys for Defendant 3M
Company
99 Monroe Avenue NW,
Suite 1200
Grand Rapids, MI 49503
(616) 454-8656
dejong@millercanfield.com
infante@millercanfield.com

Daniel L. Ring (Pro Hac Vice Filed)
Joshua D. Yount (Pro Hac Vice Filed)
Joseph M. Callaghan (Pro Hac Filed)
Mayer Brown LLP
Attorneys for Defendant 3M Company
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
dring@mayerbrown.com
jyount@mayerbrown.com
jcallaghan@mayerbrown.com

Katherine L.I. Hacker (Pro Hac
Vice Filed)
Bartlit Beck LLP
Attorney for Defendants E. I.
DuPont De Nemours and
Company, as to the fraudulent
transfer claim, and DowDuPont,
Inc., Corteva, Inc., and DuPont
de Nemours, Inc. as to all claims
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100
kat.hacker@bartlitbeck.com

Katharine A. Roin (Pro Hac Vice Filed)
Bartlit Beck LLP
Attorney for Defendants E. I. DuPont De
Nemours and Company, as to the fraudulent
transfer claim, and DowDuPont, Inc., Corteva,
Inc., and DuPont de Nemours, Inc. as to all
claims
54 West Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400
kate.roin@bartlitbeck.com

Christopher R. Gura (P58437)
Abbott Nicholson, P.C.
Attorney for Defendant The
Chemours Company, as to the
fraudulent transfer claim
1900 West Big Beaver Road,
Suite 203
Troy, MI 48084
(313) 566-2500
crgura@abbottnicholson.com

Martha N. Donovan (Pro Hac Vice to be Filed)
Margaret Raymond-Flood (Pro Hac Vice to be Filed)
Norris McLaughlin, P.A.
Attorneys for Defendant The Chemours Company, as to the fraudulent transfer claim
400 Crossing Boulevard, 8th Floor
Bridgewater, NJ 08807
(908) 722-0700
mndonovan@norris-law.com
mraymondflood@norris-law.com

Gwyn Williams (Pro Hac Vice)
Alexander P. Rothschild (Pro Hac Vice)
Latham & Watkins LLP
Attorney for Defendant Solvay Specialty Polymers USA, LLC
200 Clarendon Street
Boston, MA 02216
(617) 948-6000
gwyn.williams@lw.com
alex.rothschild@lw.com

Kegan A. Brown (Pro Hac Vice)
Latham & Watkins LLP
Attorney for Defendant Solvay Specialty Polymers USA, LLC
885 Third Avenue
New York, NY 10022
(212) 906-1224
kegan.brown@lw.com

Steven P. Croley (P60647)
Latham & Watkins LLP
Attorney for Defendant Solvay Specialty Polymers USA, LLC
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
(202) 637-2126
steven.croley@lw.com

Theodore M. Grossman (Pro Hac Vice)
Rebekah E. Blake (Pro Hac Vice)
Jones Day
Attorneys for Defendant Daikin America,
Inc.
250 Vesey Street
New York, NY 10281
(212) 326-3939
tgrossman@jonesday.com
reblake@jonesday.com

James R. Saywell (Pro Hac Vice
to be Filed)
Louis A. Chaiten (Pro Hac Vice)
Jones Day
Attorneys for Defendant Daikin
America, Inc.
901 Lakeside Avenue East
Cleveland, OH 44114
(216) 586-3939
jsaywell@jonesday.com
lchaiten@jonesday.com

Maja C. Eaton (Pro Hac Vice)
Daniel A. Spira (Pro Hac Vice to be Filed)
Sidley Austin LLP
Attorneys for Defendant Arkema Inc.
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
sgourley@sidley.com
meaton@sidley.com
dspira@sidley.com

Jessica A. Sprovtsoff (P70218)
Robert D. Boley (P82350)
J. Michael Showalter (P84412)
Schiff Hardin LLP
Attorneys for Defendant Arkema
Inc.
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1500
jsprovtsoff@schiffhardin.com
rboley@schiffhardin.com
mshowwalter@schiffhardin.com

John C. Valenti (P53272)
Javon R. David (P78214)
Beth S. Gotthelf (P38951)
Butzel Long, P.C.
Attorneys for Defendant Archroma U.S., Inc.
150 Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7099
valenti@butzel.com
Davidj@butzel.com
gotthelf@butzel.com

Melanie Black Dubis (Pro Hac
Vice)
Charles E. Raynal, IV (Pro Hac
Vice)
Parker Poe Adams & Bernstein,
LLP
Attorneys for Archroma U.S. Inc.
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
(919) 828-0564
melaniedubis@parkerpoe.com
charlesraynal@parkerpoe.com

Steven D. Weber (Pro Hac Vice)
Parker Poe Adams & Bernstein LLP
Attorney for Archroma U.S., Inc.
620 S. Tryon Street, Suite 800
Charlotte, NC 28202
(704) 335-9065
Steveweber@parkerpoe.com

Robert Jordan (Pro Hac Vice)
Parker Poe Adams & Bernstein LLP
Attorney for Archroma U.S., Inc.
200 Meeting Street, Suite 301
Charleston, South Carolina 29401
(843) 727-2650
robertjordan@parkerpoe.com

Peter C. Condron (Pro Hac Vice)
Clifford J. Zatz (Pro Hac Vice)
Laura Offenbacher Aradi (Pro Hac Vice)
Crowell & Moring LLP
Attorneys for Defendant AGC Chemicals Americas, Inc.
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500
pcondron@crowell.com
czatz@crowell.com
laradi@crowell.com

/

*/s/ Gregory M. Utter*
Gregory M. Utter